Oakley B. PALMER, an individual doing business as Palmco Engineering Company, Plaintiff-Appellee,

v.

ORTHOKINETICS, INCORPORATED, a Wisconsin Corporation, Defendant-Appellant.

No. 77–3710.

United States Court of Appeals, Ninth Circuit.

Jan. 4, 1980.

Henry C. Fuller, Jr., Milwaukee, Wis., argued, for defendant-appellant; Hahn, Cazier & Leff, Los Angeles, Cal., Wheeler, Morsell, House & Fuller, Milwaukee, Wis., on the brief.

William C. Babcock, Long Beach, Cal., for plaintiff-appellee.

Before GOODWIN and SNEED, Circuit Judges and JAMESON,* District Judge.

JAMESON, District Judge:

Plaintiff-appellee, Oakley B. Palmer, doing business as Palmco Engineering Company (Palmer), brought this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, seeking a determination that U.S. Patent 3,891,229 entitled "Travel Chair", issued to defendant-appellant, Orthokinetics, Incorporated, is invalid and not infringed. Orthokinetics counterclaimed for infringement of the patent, seeking damages and attorney fees pursuant to 35 U.S.C. §§ 284, 285. The district court held that all claims under the patent were invalid and dismissed the counterclaim. Orthokinetics has appealed from the judgment.

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

## I. Background

In November, 1973, Orthokinetics introduced into the market a chair called a "Travel Chair", designed to simplify the process of moving a wheel chair bound person by automobile. On March 14, 1974, Orthokinetics, as assignee of Edward J. Gaffney, the inventor, filed a patent application. The patent was issued on June 24, 1975.

Prior to the invention which resulted in this patent, a wheel chair bound person had to be manually lifted from the wheel chair to the automobile seat. The wheel chair was folded, carried in the automobile, and again taken out and unfolded at the point of destination. The person was then lifted bodily from the automobile seat and placed in the wheel chair. The district court found that appellant sought to simplify this method as follows:

> By means of the mechanical device depicted in the patent,[1] the inventor sought to satisfy the need for a wheelchair, designed for invalid children, that could fit and be easily loaded into an automobile with the patient seated in the chair during and after its placement on the seat of the vehicle. To achieve this result, plaintiff designed a wheelchair with retractable rear wheels permitting the chair, with the wheels retracted, to be placed on the automobile's seat. To allow entry of the front leg assembly of the chair through the automobile door, that assembly with its caster wheels was shaped and sized so it could pass through the space between the seat and door frame of the vehicle; then with the rear wheel assembly retracted, by using the frame of the wheelchair as a lever, the patient seated in the chair could be easily lifted and then placed on the seat of the automobile.

In the fall of 1975, after the patent had been issued, Palmer obtained one of Orthokinetics' "Travel Chairs" from a Los Angeles store. Shortly thereafter Palmer constructed and marketed "an almost exact copy" of the chair.[2] Upon learning of the Palmer "copy", Orthokinetics by letter dated January 19, 1976, charged Palmer with patent infringement. Palmer continued to market its chair and on April 22, 1976, commenced this action.

## II. Findings and Conclusions of the District Court

In a brief memorandum decision, constituting findings of fact and conclusions of law under F.R.Civ.P. 52, the court found:

> The basic mechanical elements of the wheelchair consist of front legs attached to a caster wheel assembly, rear wheels on a retractable spring-operated assembly, a metal frame used as a lever in loading the chair into the automobile, and a seat for the patient. All of these elements, of course, were old.

The court concluded:

> While the combination of these elements resulted in a new mechanical device that performs a useful function, i. e., that of placing a child in a wheelchair on the seat of an automobile, that function was neither unexpected nor non-obvious—it was not synergistic. It was not synergistic because the interaction of these old elements produced an expected result.[3]

## III. Contentions on Appeal

Appellant contends that the district court erred in (1) failing to make the findings required by Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), in determining whether the subject matter of the invention was obvious under 35 U.S.C. 103; (2) rewriting the claims and holding the entire patent invalid, including

1. The device is depicted at page 1 of the Appendix to this opinion. The perspective views show the three steps in placing the chair, with its passenger, on an automobile seat.

2. The district court found that "[i]f the patent is valid, plaintiff concedes that its wheel chair, an almost exact copy of defendant's chair, in-

fringes claim 1, an independent claim, and claims 2, 3, 4, 5, 9, and 10 dependent claims."

3. The court held all 11 claims constituting the patent invalid, although claims 6, 7 and 8 were not in issue.

claims not in issue; (3) treating the "synergism" test as an issue of law rather than an issue of fact and failing to make any findings of fact on this issue; (4) finding the device consisted solely of old mechanical elements; and (5) failing to make findings regarding the secondary indicia of nonobviousness.[4]

IV. *Graham v. John Deere Requirements*

Appellant contends that the findings and conclusions of the district court fail to conform to the requirements of *Graham v. John Deere, supra,* and that this failure resulted in several errors in the court's analysis. Appellant argues that if the court had properly applied the requirements of *Graham,* it would have concluded that the "Travel Chair" contains new mechanical elements. It argues further that even if the patent consists solely of old elements, a proper *Graham* analysis would have revealed that the patent was nonobvious to a person skilled in the art. Appellee does not deny that the district court failed to make the findings required by *Graham,* but contends that this was unnecessary because the "Travel Chair" is "patentably" indistinguishable from a prior art reference, the S.R. Allen patent.

The nonobviousness requirement for patentability is set forth in 35 U.S.C. § 103:

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

. . .

Congress added this statutory formulation for determining patentability in 1952. In interpreting this section in *Graham v. John Deere Co., supra,* the Court said:

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the

claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

383 U.S. at 17–18, 86 S.Ct. at 694.

■ Although "strict observance" of the factual inquiries set forth in *Graham* is necessary (*Graham v. John Deere Co.,* 383 U.S. at 18, 86 S.Ct. 684; *Anderson's-Black Rock, Inc. v. Pavement Salvage Co.,* 396 U.S. 57, 62, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969)), this court has not required a precise articulation of the *Graham* analysis where a reading of the court's entire opinion, in the context of the record, "reveals that the district court in fact appropriately examined the prior art" in comparison with the patent in question and "took into account the level of ordinary skill in the pertinent art". *Satco, Inc. v. Transequip, Inc.,* 594 F.2d 1318, 1321 (9 Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979).

V. *Nonobviousness Analysis*

It is true, as appellant contends, that the district court in concluding that the invention was not "non-obvious" did not refer to the prior art. The court made no findings with respect to (1) the scope of the prior art, (2) any differences between the prior art and the patented device, or (3) the level of skill in the art.

(1) *Difference between Prior Art and Patent in Issue*

A proper analysis of the content and scope of the prior art and a comparison of the prior art with the patent in issue per-

---

4. Many of these contentions are interrelated. While all of them will be considered in this

opinion, we shall not attempt to discuss each separately.

mits the trial court to determine (1) whether the patent is indistinguishable from prior art references and (2) whether any of the elements constituting the invention are new.

Appellee argues that the findings mandated by *Graham* were not required because there "were no structural differences between the device defined in Claim 1 of the patent in suit and a device disclosed in the prior art," i. e., the S.R. Allen patent, "a patent not disclosed in the prosecution of the patent in suit". The district court in its memorandum decision, however, makes no reference to the Allen patent or any other prior art. Its conclusion that the Travel Chair resulted "in a new mechanical device that performs a useful function" implies that the chair was distinguishable from prior art. Our comparison of the Gaffney invention with the Allen device confirms this implication.

Orthokinetics maintained in the district court that the "gist" of its invention could be perceived in Claim 1.[5] It appears from this claim that the Gaffney invention primarily made two improvements to a common wheel chair to achieve the result of loading wheel chair bound persons, particularly children, into an automobile while seated in the chairs. First, the front leg portion of the wheel chair was redimensioned to allow it to be used effectively in loading the disabled person into an automobile. This concept made it possible to load a heavier child into the automobile than could be achieved by simply lifting the chair and child into the automobile.[6] Second, the rear wheel assembly of the chair was designed to retract automatically while the seated person is being lifted and swung onto the automobile seat.[7]

The Allen device is described in its 1928 patent as a "go cart and crib" adopted for strolling "infants" and transporting them in an automobile.[8] Similar to the "Travel Chair", its rear legs and wheels can be retracted so that the carriage can be placed on an automobile seat, but the device is not a wheel chair and it cannot be used for transporting children in a seated position. Its "box-like body" is expressly designed for transporting "infants" in a prone rather than a seated position. Moreover, it does not achieve the loading through the use of leverage. The record clearly indicates that attempting to use the Allen device in this manner would be impracticable, if not impossible.

Comparing the Allen patent and the common wheel chair with the improvements in Claim 1 shows further differences from prior art. Orthokinetics' first claimed improvement teaches the loading of a disabled person into an automobile by using the front leg assembly as a lever.[9] The assem-

---

5. In its posttrial brief Orthokinetics stated that "the new elements and relationships in the claims in the patent in suit, or the 'gist of the invention', follow the words 'the improvement wherein' in claim 1." This is the only independent claim. The others are dependent claims.

6. This improvement is described as
 > the improvement wherein said front leg portion is so dimensioned as to be insertable through the space between the doorframe of an automobile and one of the seats thereof whereby said front leg portion is placed in support relation to the automobile and will support the seat portion from the automobile in the course of subsequent movement of the wheel chair into the automobile.

 Gaffney, the inventor, testified that this improvement allows a 140 pound attendant to easily load a child of up to 80 pounds into an automobile.

7. See drawings A–1. The second improvement is described as
 > means for retracting said rear wheel assembly upwardly independently of any change in the position of the front leg portion with respect to the seat portion and to a position which clears the space beneath the rear end of the chair and permits the chair seat portion and retracted rear wheel assembly to be swung over and set upon said automobile.

8. The Allen invention is depicted at page 2 of the Appendix.

9. See drawings in A–1.

bly has been redimensioned to allow it to fit through the space between the doorframe and seat of the automobile, thus allowing the front portion to be used as a fulcrum during loading. An ordinary wheel chair cannot be used in this manner. Nor does it appear that the Allen device can be used in this manner. The Allen patent instructs only that the legs of the device be retracted and that the carriage and infant be *lifted* on to the automobile seat by the use of "hand-hold slots" located at the "head end" and "foot end" of the frame. Although the device might be redimensioned so that the front legs could fit between the auto seat and door, the device is obviously not designed for loading the carriage through the use of leverage. Moreover, in light of the express purpose of the patent of transporting "infants" the practical method of placing the light load into the automobile would be to simply lift the carriage onto the seat.

Nor does it appear that the Allen patent reveals the means of retracting the rear wheels of the "Travel Chair". The rear wheel mechanism of the "Travel Chair" uses a spring mechanism and a latch to allow a person to trigger the automatic retraction of the rear wheels when loading an invalid into an automobile.[10] By contrast, the Allen patent teaches the manual retraction of each rear wheel. These wheels are bolted to the box-like body. It is conceivable that a person could retract the rear wheels of the Allen patent simultaneously with loading the crib into an automobile, but it would be impractical. It would require the attendant to unscrew the locking nuts holding the rear wheels in place and then swing the legs manually into a retracted position at the same time that he was supporting the rear of the crib. As appellant points out, this would seem to be impossible for one person to accomplish. To

prevent the danger of dropping the crib, two attendants would have to perform the operation.

From our examination of the record, the Travel Chair, and the device covered by the Allen Patent, we cannot agree with appellee that the Gaffney invention defined in Claim 1 is "patentably" indistinguishable from the Allen invention.

▪ The existence of differences between Claim 1 and prior art, however, does not necessarily require a finding that new mechanical elements are present, as appellant contends. "[T]he vast majority, if not all [mechanical devices], involve the construction of some new device . . . from old elements." *Reeves Instrument Corp. v. Beckman Instruments, Inc.,* 444 F.2d 263, 270 (9 Cir.) *cert. denied,* 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971); see *Egley v. United States,* 576 F.2d 309, 313 (Ct.Cl.1978). Although the district court could have found that the two improvements in claim 1 constituted new elements, we cannot say that its finding that all elements of the invention were old was clearly erroneous.

▪ Appellant claims that the redimensioning of the front leg portion of the "Travel Chair" so that it will fit through the door frame of the automobile and act as an effective lever constitutes a new element. Mere redimensioning of an element found in the prior art to perform a different function, however, ordinarily will not create a new element. See *Great A & P Tea Co. v. Supermarket Equip. Corp.,* 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950). The concept of leverage is, of course, a fundamental mechanical concept. The trial court could permissibly infer that the redimensioning of the front leg portion to act as an effective lever does not rise to the level of being classified a new element.[11]

---

10. See drawings in A–1.

11. We recognize that the redimensioning of the front leg portion of the patent to allow its use

as an effective lever presents a close question as to whether it should be considered a new element. In *Austin v. Marco Dental Products,*

Appellant argues that the second claimed improvement in Claim 1, involving the combination of a latch, spring, and strut mechanism to retract the rear wheel assembly automatically during loading, is also a new element. The court could also, however, permissibly infer that the combination of these common mechanical elements does not rise to the level of being classified a new element, although good mechanical skills were obviously necessary.

### (2) Adjudication of Separate Patent Claims

As set forth above, the district court found that the "Travel Chair" was composed of four basic mechanical elements. Appellant contends that the court in effect "paraphrased" or "rewrote" the claims instead of interpreting each claim, as required, and then held the entire patent invalid, including three claims not in issue. Appellee, in contending that the court did not err in invalidating the claims not in issue, relies upon his argument that the patent as a whole is indistinguishable from the Allen Patent. He argues further that the court did not "rewrite" the claims but found them indistinguishable from Claim 1, which the court summarized and held invalid.

 The claims of a patent must "particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention". 35 U.S.C. § 112. "Courts can neither broaden nor narrow the claims to give the patentee something different from what he has set forth." *Autogiro Co.*

v. *United States*, 384 F.2d 391, 396, 181 Ct.Cl. 55 (1967). It is also "well settled that each claim of a patent is entitled to a presumption of validity and is to be treated as a complete and independent invention. 35 U.S.C. §§ 282, 288." *Bourns, Inc. v. United States*, 537 F.2d 486, 493, 210 Ct.Cl. 642 (1976). A dependent claim is "presumed valid even though dependent upon an invalid claim". § 282.

 In addition to Claim 1, an independent claim, seven dependent claims were in issue. The court made no specific findings or conclusions with respect to any of the claims, but simply held the patent invalid. We agree with appellant that the district court should have made specific findings with respect to each claim in issue or at least a finding setting forth its reasons for not doing so. There appear to be substantial differences between the claims, requiring at least some factual analysis by the trial court. We agree with appellant also that it was improper for the district court, "even impliedly, to pass upon the validity of claims which were not properly put in issue". *Felburn v. N.Y. Central Railroad*, 350 F.2d 416, 420 (6 Cir. 1965) *cert. denied*, 383 U.S. 935, 86 S.Ct. 1063, 15 L.Ed.2d 852 (1966); *Chemical Construction Corp. v. Jones & Laughlin Steel Corp.*, 311 F.2d 367 (3 Cir. 1962).[12]

We cannot say, as the court did in *Satco, Inc.*, that the brief memorandum of decision, in the context of the record, reveals an appropriate examination of the prior art. Here the court simply summarized all as-

---

Inc., 560 F.2d 966, 971 (9 Cir. 1977) *cert. denied*, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978), this court affirmed a trial court's finding that a diaphragm valve system used in conjunction with dental drilling equipment was a new element. Although a similar valve was used in truck scales, the inventor had miniaturized and redesigned the value for use in dental work. The trial court found the dental valve "different in structure and function from that of the prior art references . . . and thus [it] was a new element." *Id.* at 972. The district court may wish to give further consideration to this question on remand.

12. In *Chemical Construction Corp.*, the court stated:

> The defendant argues that the court below should have adjudged invalid the remaining claims . . . [T]hese claims were not put in issue . . . and any determination as to their validity would have been error. . . . Such a determination would have violated the rights reserved to the plaintiff by the disclaimer statutes, which were enacted to mitigate the earlier rule under which a patent was held void if any claims thereof were found to be invalid. *Id.* at 374.

pects of the various claims and made no findings with respect to the separate claims. This treatment, combined with the court's failure to mention the Allen patent or any other prior art,[13] requires a remand for a *Graham* analysis of the various claims in issue.[14]

### (3) *Synergism and the Level of Skill in the Art*

As set forth above, after concluding that all elements of the Gaffney combination were old, the district court concluded that while "the combination of these elements resulted in a new mechanical device that performs a useful function," that "function was neither unexpected nor non-obvious—it was not synergistic . . . because the interaction of these old elements produced an expected result," citing *Sakraida v. Ag. Pro., Inc.*, 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976). The court continued:

> The assemblage simply did not "result in an effect greater than the sum of the several effects taken separately". *Anderson's Black Rock, Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 61 [, 90 S.Ct. 305, 24 L.Ed.2d 258] (1961). The combination, though satisfying a need, lacks "any unusual or surprising consequences" and is, therefore, not patentable under the test applicable to combination patents. *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 152 [, 71 S.Ct. 127, 95 L.Ed. 162] (1950). "The [*A & P Tea Co.*] 'unusual or surprising consequences' test for patentability of combination devices . . . is now codified [by the 1972 Patent Act] in 35 U.S.C. § 103 . . . ." *Deere & Co. v. Sperry Rand Corp.*, 513 F.2d 1131, 1132

(9th Cir.) cert. den. 423 U.S. 914 [, 96 S.Ct. 218, 46 L.Ed.2d 142] (1975).

Appellant contends that the court improperly applied the synergism test to determine that the patent was invalid. It argues that the court reached its conclusion "without regard to whether [the combination] would be obvious to a 'worker reasonably skilled in the art' at the time the invention was made." Appellant argues further that the court failed to determine whether the act *of combining* the elements would be nonobvious to one skilled in the art.

■ A trial court must determine whether the patent in issue would have been obvious to one having ordinary skill in the art "*at the time the invention was made*". 35 U.S.C. § 103 (emphasis added). "From this vantage point the critical question becomes whether the level of skill in the art was such that the *combining of the elements* in the manner claimed would have been obvious, not in retrospect, but at the time it was done by the inventor." *Republican Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 971 (7 Cir. 1979) (emphasis added). Moreover, "the mere fact that each of the elements making up the combination covered by the claims in suit appears somewhere in the prior art of record does not by itself negate patentability. All structural inventions of necessity involve a combination of old elements, *i. e.*, gears, levers, tubes, bolts, etc. A new structure is patentable only because the elements are combined in a new and unobvious arrangement." *Egley v. United States, supra*, 576 F.2d at 313–314.[15]

---

**13.** In addition to the Allen patent, Palmer presented several other prior art references depicting strollers, carriages, and chairs to rebut the presumption of patent validity of the claims in issue.

**14.** Although the record permits a comparison of Claim 1 with the prior art, there was contradictory testimony concerning the level of skill in the art and distinctions between the claims

in issue and prior art references. Credibility is a question for the trier of fact.

**15.** We recognize that in assessing the patentability of combination patents, a "more severe" test is applied to determine whether the whole in some way exceeds the sum of its parts to produce "unusual or surprising circumstances". See *Regimbal v. Scymansky*, 444 F.2d 333 (9 Cir. 1971) and cases there cited. In all of

■ The conclusory statements in the memorandum of decision concerning "synergism" are inadequate to enable this court to determine whether the district court properly considered the critical question posed by § 103. The court's findings that the "consequences" of combining the elements were not "unusual or surprising" does not resolve the question of whether the "level of skill in the art was such that the combining of the elements in the manner claimed" would have been obvious "at the time the invention was made". Although we have often noted that a synergism test will assist a court in determining whether a combination patent is nonobvious,[16] the findings and conclusions of the trial court must be guided by the requirements of § 103 and *Graham v. John Deere Co.*[17]

### (4) *Secondary Indicia of Nonobviousness*

■ The Supreme Court in *Graham* made it clear that secondary considerations such as "commercial success, long felt but unsolved needs, and failures of others", may have relevancy as "indicia of obviousness or nonobviousness". 383 U.S. at 17–18, 86 S.Ct. at 694. Citing Judge Learned. Hand's opinion in *Reiner v. I. Leon Co.*, 285 F.2d 501, 504 (2 Cir. 1960), the Court stated that these "subtests" are "more susceptible of judicial treatment than are the highly technical facts often present in patent litigation". *Id.* at 36, 86 S.Ct. at 703. These factors aid the judiciary and prevent it from "slipping into use of hindsight". *Id.*

While no evidence was presented to show "the failure of others", there was substantial evidence of a "long and unsolved need" and "commercial success".

There was evidence that prior to the marketing of the "Travel Chair" transporting handicapped children was a cumbersome process. Not only was it necessary to store the wheel chair during transportation, but the ability to load the child into the automobile was limited by the strength of the attendants to lift the child. More than one attendant was often needed, not only to transfer the child from the wheel chair to the automobile, but to prevent the child from injuring himself while enroute. Parents of handicapped children testified as to the need for equipment to place their children in and out of an automobile and the benefits of the "Travel Chair" to the children and their families.

The district court recognized this need in its comment in open court that, "There is no doubt about the fact that [the Travel Chair] is useful, it is a good thing, and it is a very, very good idea, and it helps a lot of people. . . ." The court also stated in its memorandum of decision that the device "performs a useful function . . . ."

There can be little doubt that the "Travel Chair" was a commercial success. Orthokinetics' sales manager testified that sales progressively increased after the "Travel Chair" went on the market in 1973. By

---

those cases, however, there were detailed findings of fact in compliance with the *Graham* analysis.

**16.** *E. g., Hewlett-Packard Co. v. Tel-Design, Inc.*, 460 F.2d 625 (9 Cir. 1972).

**17.** During oral argument, appellant pointed out that several jurisdictions have recently questioned the utility of the synergism test in determining patent validity. In a well reasoned opinion, the Seventh Circuit in *Republican Industries, Inc. v. Schlage Lock Co., supra*, 592 F.2d at 972, concluded that the synergism "concept [is] employed only as a figure of speech to express the truism that when all the parts of a

claimed invention are known, the combination (and the act of combining) is likely to be more obvious to one reasonably skilled in the art." (citing this court's opinion in *Reeves Instrument Corp. v. Beckman Instruments, Inc., supra*). The court concluded further that it would "continue to apply the *Graham* analysis as the exclusive means by which to measure nonobviousness under section 103". The Tenth Circuit followed *Republican Industries* in *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885 (10 Cir. 1979).

Without rejecting the "synergism test", we conclude that a *Graham* analysis is necessary in this case.

1976, approximately 110–120 chairs per month were being sold.

Although the trial court was not required to make written findings on these secondary indicia, its failure to do so raises further question with respect to its application of (and sole reliance on) the synergism test in holding the patent invalid. It is conceded that the Palmer chair is an exact copy of the "Travel Chair". The prior art introduced by Palmer did not address the same problem as the patent in suit. Close factual questions are presented. This clearly appears to be a case where secondary indicia of nonobviousness should be considered, with appropriate findings.

## VI. *Conclusion*

We reverse the judgment of the district court and remand for further consideration and findings consistent with this opinion.

## APPENDIX