**Peter A. HAMMERQUIST,**
**Plaintiff-Appellee,**

v.

**CLARKE'S SHEET METAL, INC.,**
**Defendant-Appellant.**

No. 79–4589.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1981.

Decided Oct. 13, 1981.

Rehearing and Rehearing En Banc
Denied Dec. 3, 1981.

---

Daniel P. Chernoff, Chernoff & Vilhauer, P. C., Portland, Or., for defendant-appellant.

M. H. Hartwell, Jr., Kolisch, Hartwell, Dickinson & Stuart, Portland, Or., for plaintiff-appellee.

Before DUNIWAY and GOODWIN, Circuit Judges, and PALMIERI,* District Judge.

GOODWIN, Circuit Judge.

Clarke's Sheet Metal, Inc. appeals from a judgment, following a jury verdict, that held claims 1, 2 and 3 of Hammerquist's U.S. Patent No. 3,854,910 to be valid and willfully infringed.

The Hammerquist patent claims described an apparatus for collecting dust from industrial plants. The apparatus is a combination of devices: (1) a dust collector for heavy dust particles known as a "centrifugal dust collector" (often called a cyclone); and (2) a dust filtering device for smaller particles (often called a baghouse) composed of a chamber within which is housed a circular array of pervious fabric bags for collecting dust. The system operates by filtering air from the cyclone through the baghouse. It is cleaned by reverse air flowing from the baghouse to the cyclone.

* The Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

Hammerquist first constructed his baghouse filter in August 1972 (the Aero-Vac filter). He installed it by mounting it directly on top of the cyclone; i. e., "hat-mounted." On the basis of this invention he applied for and received a patent. At a later date, Hammerquist dismounted the baghouse and cyclone placing them side-by-side with a pipe connection. This second model, INV Aero-Vac was sold but not patented.

Clarke Sheet Metal, Inc. for some time had been trying to manufacture an industrial dust collector. Its own unit, the Carter-Day filter (the Pneu-filter), was difficult to service and expensive to operate. Hearing of Hammerquist's Aero-Vac, Clarke personnel visited Hammerquist and viewed his invention. Sometime later, Clarke developed a new filter to replace the Carter-Day, and patented it as U.S. Patent No. 3,871,845. The only significant difference between the Clarke and the Hammerquist filters is that the Clarke filter is like the unpatented INV Aero-Vac unit; i. e., it is free-standing, separate and apart from the cyclone rather than hatmounted.

When Clarke began selling its Pneu-filter, Hammerquist sued Clarke for infringement. Clarke counterclaimed, alleging that the Hammerquist patent was invalid for obviousness, indefiniteness, and overclaiming. The case was tried to a jury. The jury returned a verdict finding that Hammerquist's patent was valid, and that Clarke had infringed it. The trial judge [1] adopted the jury's findings without elaboration. From that judgment Clarke appeals.

PERMISSIBILITY OF GENERAL JURY VERDICTS IN PATENT CASES

Clarke contends that the trial court should have submitted to the jury interrogatories presenting the issues of fact which are subsidiary to and underlie the legal question of obviousness. Instead, the court submitted the following question to the jury:

1. The district judge entered judgment after a jury trial conducted before a magistrate by stipulation of the parties.

"3. Do you find that Clarke's Sheet Metal, Inc. has proved that the difference between the subject matter claimed in each of the asserted claims in U. S. patent 3,854,910 (claims 1, 2 and 3) and the prior art are such that the subject matter of such claims as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art?

The failure to submit Clarke's interrogatories is not error. Clarke's argument rests on two beliefs: (1) that obviousness, as a question of law, requires judges, not juries, to decide the patent's obviousness, and thus validity; and (2) that the customary procedure of submitting specific interrogatories in many patent cases has somehow been elevated to a rule of law.

■ The judge in the case below put the question of obviousness to the jury much as he would put to the jury a question of negligence in a tort case. He read the jury the law and let the jury answer the ultimate issue framed according to the *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), standard. There was nothing improper in so doing. The question of obviousness for the purpose of allocating the work between judge and jury[2] is a question for the trier of fact upon proper instruction on the law. *See Velo-Bind, Inc. v. Minn. Mining & Mfg. Co.*, 647 F.2d 965, 971 (9th Cir. 1981). The fact that obviousness may be deemed a question of law for other disparate purposes[3] does not affect the conclusion reached above; *i. e.*, that the jury may consider the issue of obviousness.[4] *See Velo-Bind, supra*, 647 F.2d at 971. Thus, the jury is not limited to answering specific interrogatories on the factual issues underlying the question of obviousness.[5]

■ The second basis for Clarke's argument is similarly without merit. Although specific interrogatories may be customarily submitted in many patent cases, the trial judge acted within the bounds of discretion in denying Clarke's motion for special verdicts and specific interrogatories. *Tights, Inc. v. Acme-McCrary Corp.*, 541 F.2d 1047, 1060–61 (4th Cir. 1976); *Panther Pumps & Equipment Co., Inc. v. Hydrocraft, Inc.*, 468

---

**2.** The function of adjudication has been said to be a three-fold process: (1) law declaration (the articulation of general legal rules); (2) fact identification (the determination of the relevant characteristics of the particular evidence before the court); and (3) law application (the linking up of the particular with the general). Hart & Sachs, *The Legal Process: Basic Problems in the Making and Application of Law*, 374–75 (1958). The judge performs the first task and the jury performs the latter two tasks. *Id. See also* 2 Chisum, *Patents* § 5.04[3] at 5–147 (1980) (explaining how the above three tasks function in a patent case and noting that the judge performs the first while the jury performs the latter two).

**3.** *St. Regis Paper Co. v. Royal Industries*, 552 F.2d 309, 311 (9th Cir.), *cert. denied*, 434 U.S. 996, 98 S.Ct. 633, 54 L.Ed.2d 490 (1977); *Hensley Equipment Company v. Esco Corporation*, 375 F.2d 432, 436 (9th Cir. 1967). This is deemed necessary to insure the review of this concept as a matter of legal application in an area in which Congress has granted private monopolies and granted courts authority to declare that monopoly valid against the entire world. Obviousness as a question of law for this purpose, therefore, has no bearing on the characterization of this issue for submission to the judge or jury for decision.

**4.** *See Mollura v. Miller*, 609 F.2d 381, 383 (9th Cir. 1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980) ("there is no occasion to invoke the broader rule of patent cases that the appellate courts are not bound by any previous findings of fact in making ultimate determination of obviousness."); *Astro Music, Inc. v. Eastham*, 564 F.2d 1236, 1237 (9th Cir. 1977) ("The district judge's conclusion on this issue therefore must remain undisturbed unless he incorrectly understood or applied the § 103 requirement of nonobviousness . . . ."); *Bentley v. Sunset House Dist. Corp.*, 359 F.2d 140, 143 (9th Cir. 1966) ("If the patents are invalid as a matter of law, the [trial] court not only had the power, but it was its duty, to grant the motion for judgment n. o. v.")

**5.** *Accord Control Components, Inc. v. Valtek, Inc.*, 609 F.2d 763, 767 (5th Cir.), *cert. denied*, 449 U.S. 1022, 101 S.Ct. 589, 66 L.Ed.2d 484 (1980); *E. I. Du Pont de Nemours v. Berkley & Co., Inc.*, 620 F.2d 1247, 1256 (8th Cir. 1980). *But see Control Components, Inc. v. Valtek, Inc.*, 609 F.2d at 774–776 (Rubin, J. concurring) and 616 F.2d 892, 5 Cir. (Brown, J. dissenting from refusal to grant rehearing en banc).

F.2d 225, 227–28 (7th Cir. 1972), *cert. denied*, 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973). Mere custom to the contrary does not signal an abuse of discretion. In the immediate case, the trial judge's submission of a general verdict was proper.

We are satisfied that the trial judge carefully performed his duty in reviewing the jury's verdict. He adopted as his own the jury's law application.[6] We must now review that application again, because it has been challenged on appeal.

## OBVIOUSNESS

The test for obviousness is set forth in *Graham v. John Deere, supra*. The trier of fact must determine (1) the scope and content of the prior art, (2) ascertain the differences between the prior art and the claimed invention, and (3) measure their difference by the level of ordinary skill possessed by a person familiar with the pertinent art in order to decide whether the differences would have been obvious to such a person. Relevant subconsiderations include the commercial success of the invention, the extent to which it resolved long-felt needs, and the difficulty of the problem solved by the invention.

*A. Scope and Content of Prior Art.*

Clarke presented at trial various pieces of prior art. The most pertinent seem to be the Morse U. S. Patent No. 827,460 and the Abrams U. S. Patent No. 2,369,649. The Morse patent was not considered by the patent office. Ordinarily, the existence of undisclosed prior art would mean that no presumption of validity could

attach to the Hammerquist patent under 35 U.S.C. § 282. *Globe Linings, Inc. v. City of Corvallis*, 555 F.2d 727, 729 (9th Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977). But the jury in this case considered the Morse patent and returned a verdict of nonobviousness. We must assume, therefore, that the presumption remained intact and the Morse patent was thought by the jury to be cumulative of other prior art. There was substantial evidence for the jury to so find. *See NDM Corp. v. Hayes Products, Inc.*, 641 F.2d 1274, 1277 (9th Cir. 1981). The Morse patent did not add anything new to the existing prior art. Its teachings essentially duplicated the teachings of the Clarke U. S. Patent 540,720 which were considered by the patent office. As Clarke ably demonstrates in his comparison of Morse and Clarke patents given in an appendix to his brief, albeit not for this purpose, there is little if any difference between the two. The jury was thus correct in finding that the Hammerquist patent's presumption of validity had not been overcome by the evidence. *Del Mar Engineering Laboratories v. Physio-Tronics*, 642 F.2d 1167, 1172–73 (9th Cir. 1981).

*B. The Differences Between the Prior Art and the Hammerquist Patent.*

The Hammerquist patent is a combination patent. The test of synergism must therefore be applied to determine whether § 103's standard of patentability was met.[7]

---

6. The magistrate's opinion stated:
   "The question of non-obviousness is a question of law requiring an analysis of fact. *Graham v. John Deere Co.*, 383 U.S. 1 [86 S.Ct. 684, 15 L.Ed.2d 545] (1966), sets forth the analysis required to meet the standard of 35 U.S.C. § 103. The jury found that the invention was not obvious and I likewise so find."

7. The test of synergism continues to be an anomalous encrustation on 35 U.S.C. § 103 and the standard of obviousness it contains. Both the Seventh and Tenth Circuits reject synergism as a separate test of patentability. *Plastic Container Corp. v. Continental Plastics*, 607 F.2d 885 (10th Cir. 1979), *cert. denied*, 444 U.S. 1018, 100 S.Ct. 672, 62 L.Ed.2d 648 (1980);

*Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963 (7th Cir. 1979). Be this as it may, the Supreme Court continues to invoke synergism to review combination patents. *Sakraida v. Ag Pro, Inc.*, 425 U.S. 273, 281, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784 (1976); *Anderson's-Black Rock, Inc. v. Pavement Co.*, 396 U.S. 57, 60–61, 90 S.Ct. 305, 307–308, 24 L.Ed.2d 258 (1969); *A & P Tea Co. v. Supermarket Corp.*, 340 U.S. 147, 150–51, 71 S.Ct. 127, 129, 95 L.Ed. 162 (1950). And so does the Ninth Circuit. *Palmer v. Orthokinetics, Inc.*, 611 F.2d 316, 324 (9th Cir. 1980) (The panel questioned the utility of synergism analysis but refused to reject it, observing only that a *Graham* analysis is necessary in order for the court to review whether synergism exists).

This means that Hammerquist's patent is subject to strict scrutiny, and that it must demonstrate some "unusual or surprising result" to warrant patentability. *Hewlett-Packard Company v. Tel-Design, Inc.*, 460 F.2d 625, 629 (9th Cir. 1972).[8] "Consequently, there must be an express finding . . . which could be so construed." *Id.*

■ The jury was instructed as to the requirement of "an unusual or surprising result." The jury found Hammerquist's patent to be nonobvious. It must have therefore found the patent to manifest synergism. We agree with the jury. The patented device did manifest synergism.

" 'Invention,' for patent purposes, has been difficult to define. Efforts to cage the concept in words have proved almost as unsuccessful as attempts verbally to imprison the concept 'beautiful.' Indeed, when one reads most discussions of 'invention,' one recalls Kipling's, 'It's pretty, but is it Art?' and the aphorism that there is no sense in disputes about matters of taste. Anatole France once said that literary criticism is the adventure of the critic's soul among masterpieces. To the casual observer, judicial patent decisions are the adventures of judges' souls among inventions. For a decision as to whether or not a thing is an invention is a 'value' judgment. . . ." *Picard v. United Aircraft Corporation*, 128 F.2d 632, 639 (2nd Cir.) (Frank, J. concurring), *cert.*

*denied*, 317 U.S. 651, [63 S.Ct. 46, 87 L.Ed. 524] (1942).

It was no less of a value judgment for the jury in this case. If substantial evidence exists to support it, that judgment must stand.

Mr. Franks' testimony concerning the Aero-Vac system, and his comparison of it with prior art filtering devices, convinces us that substantial supporting evidence abounds. The Hammerquist filter produced synergism; *i. e.*, unusual and surprising results. Neither the Morse device, nor the Abrams apparatus, both of which were patented in 1906, or the Clarke device patented in 1895, can be said to foreshadow the Hammerquist Aero-Vac filter.

The Aero-Vac is quite simply a substantial cut above the prior art. The jury could have found that the utility of Aero-Vac was unmatched by any prior art. Unlike its supposed predecessors, the Aero-Vac is a simple unit with only one moving part. It consumes very little energy. And its vacuuming and cleaning mechanisms produced an unusually large improvement in the collection of dust. Not even Clarke's witnesses could deny this. The jury had the right, therefore, to conclude that the Aero-Vac filter system manifested synergism. Substantial evidence supports its judgment.

### C. *Secondary Considerations.*

■ Clarke contends that secondary considerations of long-felt need and commer-

---

**8.** *See generally, Globe Linings, Inc. v. City of Corvallis*, 555 F.2d 727, 732 (9th Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977); *Kamei-Autokomfort v. Eurasian Automotive Products*, 553 F.2d 603, 608–609 (9th Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977); *Deere & Company v. Sperry Rand Corporation*, 513 F.2d 1131, 1132 (9th Cir.), *cert. denied*, 423 U.S. 914, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); *Hewlett-Packard Company v. Tel-Design, Inc.*, 460 F.2d 625, 629 (9th Cir. 1972); *Regimbal v. Scymansky*, 444 F.2d 333, 338 (9th Cir. 1971). Representative of the language of these cases is the following quotation:

"[W]hen the patent sought is one which combines the teachings of the prior art, special strictness must be applied to be certain that the new claims satisfy all of the requisites of patentability, and particularly Section 103. . . . In this circuit we have determined

that the combination of old elements must produce an 'unusual or surprising result'; that 'unusual or surprising result' is the basis upon which the legal conclusion of nonobviousness must rest. . . ." *Hewlett-Packard Co. v. Tel-Design, Inc.*, 460 F.2d at 629. *But cf., Reeves Instrument Corp. v. Beckman Instruments, Inc.*, 444 F.2d 263 (9th Cir.), *cert. denied*, 404 U.S. 951, 92 S.Ct. 283, 30 L.Ed.2d 268 (1971). ("Carried to its logical conclusion . . . [the argument regarding the synergism test would preclude] the patenting of virtually every new mechanical or electrical device since the vast majority, if not all, involve the construction of some new device (or machine or combination) from old elements . . . ." Synergism is a "somewhat more stringent rule of nonobviousness . . . . It is not inconsistent with, but merely in application of the general rule stated in § 103. . . ." 444 F.2d at 270–71).

cial success do not exist to establish nonobviousness. We disagree. The Aero-Vac filter was in commercial demand. And there is considerable evidence that it solved a long-standing problem in the industry. For example, Clarke for some time had been trying to design a filtering system like Hammerquist's system, but did not succeed until after he had a good look at Hammerquist's filter. This bit of evidence alone goes a long way to rebut Clarke's present contention that the Hammerquist patent was obvious. The jury properly took into account these secondary considerations of nonobviousness in finding Hammerquist's patent valid.

## LATE CLAIMING

■ Appellant argues that the doctrine of *Muncie Gear Co. v. Outboard Co.*, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171 (1942), prevents claim 1 of the Hammerquist patent from claiming a "coupling means" of connection between the cyclone and the filter because the language was added by Hammerquist after Clarke's Pneu-Filter was already in public use. If this language were not in the patent, the patent arguably would not be applicable to the Clarke "nonhatmounted, free-standing" apparatus. Clarke may have an important point, but it did not make this point in the trial court. For this court to consider it now would require us to make an exception to the general rule that an appellate court will not give consideration to issues not raised below. *Hormel v. Helvering*, 312 U.S. 552, 556, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *Frommhagen v. Klein*, 456 F.2d 1391, 1395 (9th Cir. 1972). While Clarke cites cases allowing an exception, nothing in this case creates a pressing reason to deviate from the rule.

## THE INDEFINITENESS OF THE HAMMERQUIST PATENT

■ Clarke argues that the claims in the Hammerquist patent fail to recite an essential element of the patent—to-wit, the existence of a cage assembly to support the suspension of the filter bags in the chamber. However, Claim 1 of the Hammer-

quist patent says "said bags being supported from said chamber." That evidence supports a finding by the jury that Clarke had not established indefiniteness.

■ Clarke's second argument concerning indefiniteness is that the inclusion of the word "where" in line 37, column 6, of Claim 1 instead of the word "wherein" makes the entire claim indefinite. Clarke did not raise this issue before the jury, probably wisely. We will not hear it now.

## OVERCLAIMING

■ Clarke contends that the Hammerquist patent claims include old parts of previous inventions. Such overclaiming would not be permitted by *Lincoln Co. v. Stewart-Warner Corp.*, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938). The jury found no overclaiming. Again, substantial evidence supports the verdict.

The evidence establishes, contrary to Clarke's contentions, that the Hammerquist patent does not claim items found in the prior art. The prior art was primitive in nature. It did not contain a stationary circular assembly of bags or a true centrifugal separator of dust particles. Nor did it describe a vacuum cleaning mechanism such as is found in Hammerquist's apparatus. The jury could easily have found no overclaiming.

## INFRINGEMENT

■ Clarke contends that Hammerquist is estopped from broadly construing the words "coupling means" in his patent claim in order to encompass the "nonhatmounted/free-standing" Clarke Pneu-filter because Hammerquist did not intend such a broad definition at the time the patent was issued. There is evidence, however, which permitted the jury to believe that the language was intended to be broad. The evidence is summarized by the district judge below who denied appellant's summary judgment motion and need not be repeated here. Hammerquist's patent could, therefore, encompass the Clarke free-standing filter and be infringed by it.

In addition, because willful infringement involves a mental state peculiarly in the

**1326**

realm of jury judgment, the jury could properly have found on the basis of evidence before it that Clarke willfully infringed Hammerquist's patent.

## JURY INSTRUCTIONS

Clarke attacks various parts of the jury instructions. Only one point merits discussion. During the trial, Hammerquist exploited evidence of Clarke's copying of his invention. The trial court should have cautioned the jury not to equate copying with nonobviousness. The two are not the same thing. Copying is a legitimate secondary consideration of nonobviousness. *Hewlett-Packard Co. v. Tel-Design, Inc.*, 460 F.2d at 631.

However, in viewing the record as a whole, we cannot say that the failure to give the cautionary instruction was prejudicial. The jury was well instructed as to all matters, and reached a permissible conclusion. There is no reason to disturb the verdict.

Affirmed.