Peter M. **ROBERTS**, Plaintiff-Appellee,

v.

**SEARS, ROEBUCK AND COMPANY,**
Defendant-Appellant.

Nos. 82–1886, 82–1958.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 9, 1982.

Decided Jan. 14, 1983.

Rehearing Granted and Opinion
Vacated March 14, 1983.

James G. Hunter, Jr., Latham, Watkins, Hedlund, Hunter & Lynch, Chicago, Ill., for defendant-appellant.

Louis G. Davidson, John B. Davidson, Sidney Neuman, Chicago, Ill., for plaintiff-appellee.

Before ESCHBACH and POSNER, Circuit Judges, and GRANT,* Senior District Judge.

* Of the Northern District of Indiana.

POSNER, Circuit Judge.

Peter Roberts, the owner of a patent for a quick-release socket wrench, sued Sears Roebuck for patent infringement. The jury found the patent valid and infringed and awarded Roberts $5 million in damages (later raised to more than $8 million), and Sears has appealed, arguing among other things that the patent is invalid because "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Obviousness is a question of law rather than of fact. *Dual Mfg. & Engineering, Inc. v. Burns Industries, Inc.*, 619 F.2d 660, 661 (7th Cir.1980) (en banc).

A socket wrench has two parts (see Figure 1): the shaft

FIG. 1

which the person using the wrench grasps and turns (labeled "10" in Figure 1), and a detachable socket (16) which grips the nut that the wrench is turning. Usually the wrench comes with a number of sockets of different size so that a single wrench can be used to turn nuts of different width.

The principle of the socket wrench is not new. The alleged novelty of the Roberts patent is in the mechanism, shown in Figure 2, for releasing the socket when

FIG 2

the user of the wrench wants to change sockets. The knob (22) at the top is the pushbutton (also 22) on the back of the head of the wrench (see Figure 1). Notice that the pushbutton is not depressed. In this,

the locked position, the pin (20) to which the pushbutton is attached is pressing a little ball (18) against, and partially through, a ring in the wall of the mechanism; since the diameter of the ring is smaller than that of the ball, the ball cannot fall out. In the locked position the part of the ball that protrudes outside the ring (24) is lying in a depression in the inner wall of the socket (not shown in Figure 2), and so holding the socket on the wrench. Pressing the pushbutton will force the pin down until the hollow space in it (26) is next to the ball, and the weight of the socket will force the ball into that space. There will now be nothing holding the socket to the wrench, and the socket will fall of its own weight.

This is the Roberts quick-release mechanism. It was a huge commercial success—though this may have owed a lot to Sears' promotion and marketing of it—because it made possible changing sockets with one hand. By holding the wrench face downward and pushing the pushbutton with your thumb you can drop off the socket attached to the wrench, and by keeping the button down you can insert the wrench into a different socket and then lock it onto the wrench simply by releasing your thumb. Roberts, an 18-year-old employee of Sears, came up with this design in six months. He obtained a patent, assigned it to Sears, later sued Sears for having defrauded him of his patent rights, and won that suit, see *Roberts v. Sears, Roebuck & Co.*, 573 F.2d 976 (7th Cir.1978), 617 F.2d 460 (7th Cir.1980), which is unrelated to the present one.

■ In deciding whether an invention is obvious, "When all is said, we are called upon imaginatively to project this act of discovery against a hypostatized average practitioner, acquainted with all that has been published and all that has been publicly sold. If there be an issue more troublesome, or more apt for litigation than this, we are not aware of it." *Harries v. Air King Products Co.*, 183 F.2d 158, 162 (2d Cir.1950) (L. Hand, J.). We must avoid the pitfall described by Benjamin Franklin: "There are every where a number of people who, being totally destitute of any inventive faculty themselves, do not readily conceive that others may possess it: They think of inventions as of miracles; there might be such formerly, but they are ceased." Letter to John Lining, March 18, 1755, in 5 Papers of Benjamin Franklin 521, 526 (Labaree & Bell eds. 1962). But the equal and opposite pitfall is to think every commercially successful idea patentable.

A patent confers a monopoly over the products in which the patented idea is embodied, and monopoly, among its other effects results in a lower output of the monopolized product, and so reduces consumer welfare. The framers of the Constitution and the Patent Code would not have wanted patents to be granted where the invention would have been made anyway, and about as soon, without any hope of patent protection. The grant of a patent in such a case would confer no benefits that might offset the costs of monopoly. Cf. *Atlantic Works v. Brady*, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438 (1883); *Graham v. John Deere & Co.*, 383 U.S. 1, 5–6, 86 S.Ct. 684, 687–88, 15 L.Ed.2d 545 (1966). The concept of obviousness identifies such inventions—inventions that do not cost much in time or other resources to make because existing products or processes embody most of the information that constitutes the invention—and denies them patent protection. See Kitch, *Graham v. John Deere Co.: New Standards for Patents,* 1966 Sup.Ct.Rev. 293.

Roberts' quick-release mechanism is simplicity itself and as one would expect its essential elements were well known when it was invented. A man named Wendling had already patented the use of a pin and ball to hold a socket onto a wrench; his device lacked only the pushbutton. DePew had invented a mechanism for lifting heavy loads that worked like a socket wrench, with the load corresponding to the socket; a pin protruded from the top of the mechanism, much like Roberts' pushbutton, and was moved up and down to release the old load and lock on a new one to the lifting mechanism. Gonzalez and Carpenter separately had patented socket wrenches that had the essential elements of the Roberts patent; true, the emphasis was on the lock-

ing rather than the release function, but these are reciprocals. Wilson had submitted a patent application for a quick-release socket wrench almost identical to Roberts', though the application was abandoned, and was not known to Roberts when he submitted his application.

▎The relevance of the earlier patents and of Wilson's application is not that they anticipated Roberts' patent and hence invalidated it—they may or may not have; that is not the issue we decide—but that they show that the basic ideas embodied in Roberts' patent were already well known when he made his invention. Cf. *Republic Industries, Inc. v. Schlage Lock Co.*, 592 F.2d 963, 973–75 (7th Cir.1979); *Custom Paper Products Co. v. Atlantic Paper Box Co.*, 469 F.2d 178, 180 (1st Cir.1972). The idea that a socket could be locked to a wrench with a pin and ball device and that a pushbutton could be used to make the pin release one socket and lock in another was not new. What was new was a device in which these ideas worked smoothly to enable sockets to be changed easily with one hand. That was Roberts' contribution, and it was genuine, but it was entitled to patent protection only if it was the kind of contribution unlikely to be induced except by the promise of a monopoly, and we do not think it was that kind of invention, because we think it would have been made anyway, and soon. Cf. *Scott Paper Co. v. Fort Howard Paper Co.*, 432 F.2d 1198, 1204 (7th Cir.1970). Everyone knew there was a market for a quick-release wrench; everyone knew the elements of such a wrench—the pin and ball device for holding the socket in place and the pushbutton for releasing the old socket and locking in the new. It was just a question of coming up with a workable embodiment of these ideas, a task for which no special training, expensive equipment, or prolonged testing and refining were necessary. Patent protection would overcompensate the inventor in these circumstances and by so doing would both draw excessive resources into the making of minor improvements and impose unnecessary costs of monopoly on the community.

The judgment is reversed with directions to dismiss the complaint.