**RAILROAD DYNAMICS, INC.,**
**Appellant/Cross-Appellee,**

v.

**A. STUCKI COMPANY,**
**Appellee/Cross-Appellant.**

**Appeal Nos. 83–951/961.**

United States Court of Appeals,
Federal Circuit.

Jan. 25, 1984.

---

**5.** The legislative history of the statute is, at best, equivocal. *See American Federation,* 702 F.2d at 1187.

1508

Ronald L. Panitch, Philadelphia, Pa., argued, for appellant. With him on the brief was Alan S. Nadel, Philadelphia, Pa.

Raymond G. Hasley, Pittsburgh, Pa., argued, for appellee. With him on the brief were Brian W. Ashbaugh, E. Wallace Breisch, Kean K. McDonald and Stephen J. Springer, Philadelphia, Pa.

Before MARKEY, Chief Judge, FRIEDMAN, Circuit Judge, and NICHOLS, Senior Circuit Judge.

MARKEY, Chief Judge.

Appeal from a judgment of the District Court for the Eastern District of Pennsylvania denying motions for judgment notwithstanding the verdict (JNOV) and for a new trial. U.S. Patent No. 3,837,292 ('292 patent), assigned to A. Stucki Co. (Stucki), was held valid and found infringed. Damages were awarded in the amount of $2,182,986. We *affirm.*

*Background*

The Invention

Figure 8 of the '292 patent is illustrative:

A railroad freight car (not shown) has beneath it four side frames 121, each carrying two of the car's eight wheels (not shown). Springs 22, 23 are grouped between the wheels in each side frame and act as shock absorbers. Each end of the car rests on a bolster 118 extending between the side frames at each side of the car, each end of the bolster resting on the springs.

In operation, freight cars tend to rock from side to side, a phenomenon known in the industry as "rock and roll". Severe rocking and rolling can cause derailment.

The '292 patent discloses as a solution to rock and roll the replacement of one of the springs with a hydraulic shock absorber assembly (snubber) 132. A spring 170 holds the snubber normal to the bolster and biases the hydraulic piston rod 154 out of contact with frame 121 when the car is lightly loaded. The snubber operates only when the car is loaded or bounces sufficiently to compress the springs to the point at which the hydraulic rod 154 of the snubber contacts the frame (or, when the snubber is reversed in position, the point at which the rod contacts the bolster).

Claim 1 is representative:

1. In a dampened railway truck assembly selectively operable in loaded and unloaded conditions and having a hydraulic snubber apparatus interposed in a spring group intermediate a bolster member and a side frame member, the improvement comprising: means interposed between said snubber apparatus and one of said members to bias said snubber apparatus out of operative engagement with said

one of said members when said truck assembly is normally operating in an unloaded condition; and said means and said snubber apparatus being cooperable to initiate hydraulic snubbing by said snubber apparatus substantially only when said railway truck assembly is normally operating in a loaded condition, the bias of said means is partially overcome and said snubber apparatus is in operative engagement with both of said members.

### Procedural History

Railroad Dynamics, Inc. (RDI) brought a declaratory judgment action against Stucki in 1975, seeking a declaration of patent invalidity. Stucki counterclaimed for infringement.

RDI admitted infringement and the liability issue was tried to a jury for three weeks (May 19, 1980 to June 10, 1980). The trial judge gave detailed instructions to the jury, covering over 51 pages of the record. The jury answered in writing ten inquiries labeled "interrogatories", each of its answers favoring Stucki. The parties agree that the jury's answers amounted to a general verdict in favor of Stucki.

The damages issue was tried to the court from February 9, 1981 to February 20, 1981. The court in an unreported Memorandum established a reasonable royalty of $35.00 per carset (four snubbers) plus 6% interest. On August 25, 1981, the court issued an Order that judgment be entered in favor of Stucki for $1,960,700. Judgment was entered on August 26.

RDI moved for JNOV or for a new trial and objected to inclusion of royalties on certain carsets in the award. Stucki moved to alter or amend judgment by increasing the amount of the award.

Judge Broderick, in a careful and exhaustive Memorandum published at 579 F.Supp. 353, 218 USPQ 618, reviewed all the evidence, and denied the post trial motions of RDI and Stucki (except for correction of a clerical error in the calculation of interest). The district court entered an Order on March 25, 1983 that the August 26, 1981 judgment be corrected, *nunc pro tunc,* in favor of Stucki for $2,182,986. Final judgment was accordingly entered March 28,[1] 1983, or some seven years after suit was filed.

### Issues

(A) Whether the judgment entered on the jury verdict is supported in the record.

(B) Whether the district court erred in: (1) submitting a legal issue to the jury; (2) submitting interrogatories to the jury; (3) instructing the jury; (4) failing to declare invalidity for lack of oath or declaration.

(C) Whether the district court erred in determining the amount of damages.

### OPINION

#### Standard of Review—In General[2]

▮ It is judgments that are appealed. Because a final judgment issues in favor of the movant, it has been said that "an order granting a motion for JNOV is appealable".

**1.** Damages were awarded on this basis:

| | RDI Carsets Shipped | Royalty ($35.00/ Carset) | Royalty with Compound Interest at 6% |
|---|---|---|---|
| 12/1/74 – 4/30/75 | 2,406.75 | 84,236 | 124,400 |
| 5/1/75 – 4/30/76 | 5,043.00 | 176,505 | 245,977 |
| 5/1/76 – 4/30/77 | 6,805.00 | 238,175 | 312,105 |
| 5/1/77 – 4/30/78 | 7,145.00 | 250,075 | 309,493 |
| 5/1/78 – 4/30/79 | 9,488.00 | 332,080 | 386,807 |
| 5/1/79 – 4/30/80 | 13,296.00 | 465,360 | 513,013 |
| 5/1/80 – 2/9/81 | 7,999.75 | 279,991 | 291,191 |
| TOTAL | 52,183.50 | 1,826,422 | 2,182,986 |

**2.** This section is distasteful dicta deemed desirable only in view of the growing incidence of jury trials in patent cases and the indication of need in the briefs here and in other appeals.

Orders denying a motion for JNOV and granting or denying a motion for new trial do not generally result in judgments and are not themselves appealable. 5A Moore's Federal Practice ¶ 50.16 (2d ed. 1983). In those latter instances, the only appealable judgment is that entered on the jury's verdict.

■ Where no post-trial motions of the type discussed here were filed, and the appeal is directly from the judgment entered on the jury's verdict, review for sufficiency of evidence is extremely limited or non-existent, prejudicial legal error must be shown to have occurred in the conduct of the trial, and the action of an appellate court is limited to affirmance or remand for new trial. *See Lenard v. Argento,* 699 F.2d 874, 888 (7th Cir.1983); *Scientific Holding Co. v. Plessey, Inc.,* 510 F.2d 15, 28 (2nd Cir.1974). It thus behooves counsel to file non-frivolous motions for directed verdict, for JNOV, and for new trial.

■ Similarly, where there has been no motion for JNOV under Rule 50(b) Fed.R. Civ.P., and nothing of record that may be treated as such a motion, an appellate court cannot reverse or order judgment for appellant. *Cone v. West Virginia Pulp & Paper Co.,* 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849 (1947); *Globe Liquor Co. v. San Roman,* 332 U.S. 571, 68 S.Ct. 246, 92 L.Ed. 177 (1948); *Johnson v. New York, New Haven & Hartford Railroad Co.,* 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952). Moore's, *supra,* ¶ 50.12. An appeal may not be treated as a substitute for a motion for JNOV that was not made to the district court.

Though it has been said that a district court presented with a motion for JNOV must determine whether there was "substantial evidence to support the verdict", *See Connell v. Sears, Roebuck & Co.,* 722 F.2d 1542 (Fed.Cir. 23, 1983), the quoted phrase must not be taken as applicable in the same manner to all issues encompassed in the verdict or in a manner that would disregard the proper placement of the burden of proof. For example, the verdict may be for the patent owner, necessarily implying a conclusion that the patent is valid. The quoted phrase must not be taken in that case as meaning that the district court, in considering a motion for JNOV attacking validity, determines only whether the patent owner had introduced sufficiently substantial evidence to support that conclusion. That approach would, contrary to the statute, 35 U.S.C. § 282, shift to the patent owner the burden of proving facts establishing validity.

■ Patent owners are never in law required to prove facts establishing validity, though they may when necessary be well advised to prove such facts in rebuttal of a patent challenger's case. When they do, a verdict of validity may be sustained on the failure of the challenger to meet its burden in light of the rebuttal evidence.

The burden placed on patent challengers by § 282 is not undue. There are many grounds for challenging a patent. Challengers often press them all; and challengers win if they establish only one.

■ When a jury verdict of validity is tested by a motion for JNOV, therefore, the district court must determine whether the patent challenger's evidence met the burden imposed by § 282. If that evidence be such as to have so withstood the patent owner's rebuttal evidence that reasonable jurors could not have concluded that the patent is valid, the motion should be granted. If the patent challenger's evidence fails that test, the motion should be denied.

■ When the verdict connotes invalidity, a properly instructed jury has necessarily determined that the patent challenger's evidence met the burden imposed by § 282. A district court presented with the patent owner's motion for JNOV would apply the same test, i.e., whether reasonable jurors viewing the challenger's evidence could or could not have reached the conclusion that the patent is invalid.

■ Respecting infringement, the shoe is on the other foot, for there the burden is on the patent owner. Whether the verdict be for the patent owner or alleged infringer, a motion for JNOV attacking the infringement finding must be tested on whether the patent owner's evidence was such that rea-

sonable jurors could or could not have determined that the claims were or were not infringed.

### Standard of Review—This Case

■ The present denial of a motion for JNOV, though not appealable, is reviewable in connection with the appeal from the judgment entered on the verdict. When a motion for JNOV has been granted, the judgment on review is that entered by the trial judge, not the judgment that would have been entered on the verdict. Whether the motion was denied or granted, appellate review follows the decisional path, discussed *infra,* trod by the trial court. Moore's, *supra,* ¶ 50.07.

■ Similarly, though the denial or grant of a motion for new trial is not appealable, a denial of that motion is reviewable in connection with the appeal from the judgment entered on the verdict. Review is conducted, however, on an abuse of discretion standard. Moore's *supra,* ¶ 59.15[3].

■ Where, as here, a motion for JNOV was denied, appellee may assert grounds that would entitle him to a new trial if denial of the motion for JNOV is held to have been in error. Rule 50(d), Fed.R. Civ.P. Stucki's assertions in support of the verdict and the denial of RDI's motions may be considered an assertion of such grounds here.

■ Where, as here also, motions for JNOV and for new trial have been denied, an appellate court may affirm the denial of the former, reverse the denial of the latter, and order a new trial. Moore's, *supra,* ¶ 50.15.

Though the foregoing rules and decisions govern the standards of review and actions open to an appellate court on appeals from judgments entered under various circumstances following a jury trial, the parties here have essentially ignored those rules and decisions. RDI does not directly assert that the jury's verdict resulted from prejudicial legal error. It does argue error in the denial of its motions (directly respecting its motion for JNOV; indirectly respecting its motion for new trial, i.e., by asserting error in the conduct of the trial).

RDI disregards the trial court's Memorandum. Except for a mention of "the patent monopoly" and a one sentence reference to *Roberts v. Sears, Roebuck and Company,* 697 F.2d 796 (7th Cir.) *vacated and remanded en banc,* 723 F.2d 1324, (7th Cir. 1983), that Memorandum reflects a thorough, unchallengeable statement of the factual and legal basis for denial of RDI's motions, as well as a correct application of the law and procedure governing jury trials in patent cases and the determination of damages in this case.

One who appeals from a judgment entered on a verdict absent post trial motions, from a judgment entered on the grant of a motion for JNOV, from a judgment entered on a verdict after denial of a motion for JNOV, or from a judgment entered on a verdict after denial of a motion for new trial, if he would not waste the court's time and his client's money, must comply with the applicable rules. If the first, appellant must come prepared to show that prejudicial legal error occurred at trial. If the second or third, appellant must come prepared to show that the jury's factual findings were not supported by substantial evidence, or if they were, that the jury's legal conclusion was not supported by those facts. If the last, appellant must come prepared to show an abuse of discretion in denying the motion for new trial.

Though the present appeal is from the judgment entered on the jury's verdict, the denial of RDI's motion for JNOV is, as above indicated, reviewable. Because review of the latter encompasses the former, they may be discussed together. In light of the record and the presentation of the parties, we consider together under (A) the jury's verdict and the denial of the motion for JNOV, we consider under (B) the denial of RDI's motion for new trial in light of its attacks on the conduct of the trial in relation to the jury's verdict, and we consider under (C) the judgment of the court entered on the damages proceeding.

### (A) JNOV—The Jury's Verdict

■ Upon presentation of a motion for JNOV following a jury verdict on patent

validity, the district court must first consider the fact evidence and draw reasonable inferences in a light most favorable to the non-moving party, without determining credibility or substituting its choice for that of the jury when conflicting elements appear in the substantial probative fact evidence. The moving party is entitled to JNOV when the court is convinced: (1) that reasonable persons could not in light of that evidence have found the facts necessary to support the jury's verdict; *or* (2) that the facts properly found cannot in law support that verdict. If, on the other hand, the court is convinced that reasonable persons could have found in light of that evidence all the facts necessary to support the jury's verdict, denial of the motion for JNOV is required. *Connell, supra,* 722 F.2d at 1546.

Thus the trial judge engages in a two step process when presented a motion for JNOV: (1) determine what facts are supported by substantial evidence; and (2) determine whether those facts support the legal conclusion necessarily drawn by the jury enroute to its verdict.

In conducting the first step, the trial judge avoids invasion of the jury's province by respecting its right to select reasonably from the probative evidence and to determine credibility. In conducting the second step, the judge avoids a miscarriage of justice by reaching, when the rules render it necessary, a legal conclusion different from that of the jury. Because of the respect due the constitutional right to a jury trial, the rules relating to the judge's role necessarily limit that judicial interposition to instances in which the underlying facts found by the jury (in writing or as implied from its return of a general verdict) are either not themselves supported by substantial evidence or, if so supported, cannot in turn support the jury's legal conclusion.

Thus the judge who was present at trial is best positioned, when presented a motion for JNOV, to review in detail the evidence and events at trial. In the present case, our decisional approach is aided by the trial judge's review and his Memorandum setting forth his reasons for denying the motion for JNOV.

■ Our review of Judge Broderick's thorough Memorandum coupled with consideration of the parties' presentations on appeal, leads inescapably to the conclusion that RDI's motion for JNOV was properly denied.

The thrust of RDI's arguments here center around a piece of non-patented prior art known as the Holland arrangement. In that arrangement a stiff spiral or "volute" is placed between the bolster and the frame. The dispute at trial was whether the spiral was, unlike the snubber of the claimed inventions, in contact with the bolster and frame. RDI says the Holland arrangement is spaced like the claimed snubber and is therefore more pertinent than the art considered by the Patent and Trademark Office (PTO), and that it would have rendered obvious the inventions claimed in the '292 patent. On that basis, RDI argues that there is evidence of record which would support a grant of its motion for JNOV.

RDI says that because "the issue of obviousness is a legal conclusion, albeit based on evidence in the form of facts", that issue is "fully reviewable by this court *de novo*". The assertion is at best confusing. Every legal conclusion must be based on facts established by evidence. "*De novo*" review means a totally new fact-finding effort.

We do not sit as fact-finders. Given the facts supported by substantial evidence, we are certainly at liberty, as is the trial court, to say that the jury committed an error of law in reaching its conclusion on obviousness when those facts will not in law support the conclusion. But that is quite another thing from what is desired by RDI.

■ As appellants are wont to do, RDI seeks a second trial, albeit at this level. In arguing for "*de novo*" review of the obviousness "issue", RDI would render a trial of that question unnecessary, for all that would be necessary under RDI's proposal is that the parties mail us the patent and the prior art and ask whether we think the claimed invention would have been obvious or unobvious.

Thus RDI misconceives our role as an appellate court. In the concert hall of justice, each musician has a part to play. When one on whim plays not his own but another's part, discord is certain. Moreover, our parts are played under well defined rules. When a player elects to play under special rules of a personal design, though his playing should satisfy so sweetly the justice of his inner ear, the concert itself cannot succeed. The roles and rules of trial and appellate courts are distinct and distinctly designed for harmony. Hence, we reject RDI's invitation to consider the Holland arrangement evidence *de novo* and to reach our own conclusion on obviousness in a vacuum, as though the many events before this appeal never occurred.

That there may have been trial evidence favorable to both sides, i.e., to RDI and to Stucki, is simply irrelevant. There usually is. At oral argument, RDI responded to this court's indication that it did not sit to review evidence *de novo* with an assertion that there is *no* evidence favorable to Stucki. That assertion is unfounded. The ample evidence favorable to Stucki is discussed by Judge Broderick at 579 F.Supp. 364–66, 218 USPQ 625–26.

RDI's "no evidence" assertion is shorthand for its disagreement with first the jury's and now the district court's view of the evidence, in particular the expert testimony that contact of the bolster with the spiral occurs in the Holland arrangement. Under the rules governing our jurisprudence, the jury had a right to credit that factual expert testimony, and, under those rules, the trial judge could not deprive the jury of that right by substituting his own credibility determination. Nor may we by substituting ours. Because reasonable persons, crediting that testimony, could have found that the Holland arrangement did not involve the spacing asserted by RDI, the denial of RDI's motion for JNOV was required.

RDI's other attacks on the jury's verdict that are couched in terms of attacks on the denial of its motion for JNOV are without merit.

### (B) Denial of New Trial Motion

Though not so designated, RDI's assertions of error in the conduct of the trial (issues (B)(1), (2), and (3)) are attacks on the denial of its motion for a new trial. These attacks would if sustained warrant a new trial (not, as RDI appears to assume, a reversal and judgment for it). As appears below, no basis exists for declaring the denial of RDI's motion for new trial to have been an abuse of discretion.

### (B)(1) Submitting A Legal Issue to the Jury

■ RDI strenuously asserts error in the submission of the question of obviousness to the jury, citing language from an opinion of another court seeming to so state.

This court has held that it is not error to submit the question of obviousness to a jury. *Connell, supra,* 722 F.2d at 1547. As stated in *Connell,* there is no reason for distinguishing the submission of legal questions to a jury in patent cases from the routine submissions of legal issues to juries in other types of cases.

Language appearing elsewhere, to the effect that a jury "made no findings" when it returned a general verdict, or that the legal conclusion regarding obviousness must "always be made by the judge and not the jury", are as so broadly stated difficult to understand. A jury always and necessarily makes findings (albeit unwritten) before it reaches its general verdict. Similarly, a jury necessarily reaches a legal conclusion, presumably in accord with the judge's instructions on the law, before it reaches its general verdict. Moreover, it is idle to speak of the jury solely as fact finder, so long as instructions on the law and general verdicts remain elements of a jury trial.

When and if Rules 49, 50, and 51, Fed.R. Civ.P., are repealed, there may be room for the restriction of juries to a fact finding role and for prohibition of general verdicts in patent or other types of jury trials. Until that day, a prohibition of general verdicts (and disregard of the findings and legal conclusions a jury must make in

reaching those verdicts) cannot be accomplished by judicial fiat.

There is, of course, no reason for considering patent cases as somehow out of the mainstream of the law and rules of procedure applicable to jury trials for centuries under our jurisprudence. Until waiver of jury trials was permitted by the Act of March 3, 1865, ch. 86, § 4, 13 Stat. 501, all cases at law were tried by juries. The comparatively recent resurfacing of jury trials in patent cases, though productive of discomfort for some judges and commentators, may or may not be wise or welcome; it forms no basis for creation of special and unauthorized rules, or for the consequent risk of effectively denying the constitutional right spelled out in the first clause of the Seventh Amendment.

 Thus it is neither error nor dangerous to justice to submit legal issues to juries, *the submission being accompanied by appropriate instructions on the law from the trial judge.* The rules relating to interrogatories, jury instructions, motions for directed verdict, JNOV, and new trial, and the rules governing appeals following jury trials, are fully adequate to provide for interposition of the judge as guardian of the law at the proper point and when necessary. There is no question that the judge must remain the ultimate arbiter on the question of obviousness. He or she exercises that role first in exercising the judge's duty of giving proper instructions on the law to the jury before it considers its verdict. The judge exercises control on the question again when presented with a motion for JNOV or new trial. In no sense need the judge abdicate the guardianship role. All that is necessary is that the trial judge's role, as it clearly was here, and ours on appeal, be played within the rules.

### (B)(2) Interrogatories

Asserting that submission of general interrogatories (instead of specific interrogatories) was error, leading to a reversal of the roles of judge and jury, RDI centers its attack on interrogatory 1 dealing with obviousness:

1. Do you find that the plaintiff has proved by clear and convincing evidence that United States Patent No. 3,837,292 is invalid on the ground of obviousness?

The ten interrogatories submitted to the jury in this case, and the jury's answers, are found in Appendix A to this opinion. As may be seen, all but interrogatories 2, 9, and 10 are substantially identical with interrogatory 1, differing only with respect to the many grounds of invalidity asserted by RDI.

 District courts have broad authority and discretion in controlling the conduct of a trial. That authority extends to the form by which juries return verdicts, Fed.R.Civ.P. 49, and will not be interfered with unless an abuse of discretion is shown. *See Hammerquist v. Clarke's Sheet Metal, Inc.,* 658 F.2d 1319, 1322–23, 212 USPQ 481, 483 (9th Cir.1981), *cert. denied sub nom. Carsonite International Corp. v. Carson Mfg. Co.,* —— U.S. ——, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983); *Tights, Inc. v. Acme-McCrary Corp.,* 541 F.2d 1047, 1061, 191 USPQ 305, 314–15 (4th Cir.), *cert. denied sub nom. Kayser-Roth Corp. v. Tights, Inc.,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). RDI has not shown that the use of the present "interrogatories" constituted an abuse of discretion requiring a new trial in this case.

The challenged "interrogatory" is inartfully labeled as such by the parties. It sets forth a standard of proof ("proved by clear and convincing evidence") in relation to a legal conclusion ("invalid on the ground of obviousness"). Yet legal conclusions are not proved; facts are. Interrogatories, as such, are best employed in seeking answers to factual questions, the answers to which lead to or require a legal conclusion.

That invalidity for obviousness requires proof by clear and convincing evidence of facts establishing obviousness is subject matter not for interrogatories but for instructions on the law guiding the jury enroute to its conclusion on the legal issue submitted to it. Rule 51; Fed.R.Civ.P. However, if it be error to label requests for

verdicts coupled with elements of instructions on the law as "interrogatories", it must be viewed in light of the entirety of events at trial, and as so viewed it was harmless.

Though labeled as "interrogatories", the ten questions put to the jury were designed to elicit, and were treated by all concerned as having elicited, a ten-part verdict. Because validity was the only issue tried, and the ten interrogatories encompassed each of RDI's numerous defenses, RDI can hardly complain that the jury returned a separate verdict on each of those defenses, instead of returning a general verdict reading, for example, "we find in favor of Stucki" (which of course it could have done absent the ten "interrogatories"). The jury's responses were not special verdicts, because they were not simply "written finding[s] upon each issue of fact". Rule 49(a), Fed.R.Civ.P. Nor was there a single general verdict, *per se*, accompanied by "written answers" to "one or more issues of fact the decision of which is necessary to a verdict". Rule 49(b) Fed.R.Civ.P. Nonetheless, as above indicated, the parties have correctly viewed the jury's ten responses as the equal of a general verdict for Stucki. That the jury spoke specifically with respect to each defense is in this case of benefit to the courts and to the parties.

RDI's primary attack on the interrogatories, which its briefs on occasion call "instructions", centers on the statement that the patent challenger's burden is met by "clear and convincing" evidence, whereas RDI says it is met when a mere "preponderance" is shown. The burden, as above indicated, is to prove *facts* supporting defenses, not, as RDI says, to prove the *legal conclusion* (patent invalidity) sought by those defenses. This court has said that the standard of proof of facts necessary to support a legal conclusion of invalidity is "clear and convincing". It does not change upon a showing of prior art not considered in the PTO or from defense to defense. *Connell, supra.*

■ RDI's assertion that the interrogatories resulted in role reversal, in which the judge played the fact-finding role of the jury, is without merit. That the judge, having considered all of the evidence in response to RDI's motions, said he would have made the same findings as those made by the jury does not constitute role reversal. Moreover, as above indicated, when a jury returns a general verdict, the law presumes the existence of fact findings implied from the jury's having reached that verdict. That the jury must make certain findings before it can reach its verdict is, as it was here, made clear in the instructions on the law given the jury. The general verdict thus includes the jury's legal conclusion and a set of implied fact findings, the latter being those necessary to support the legal conclusion encompassed in the verdict.

■ When, as here, the judge is presented with a motion for JNOV or for new trial and determines whether there is sufficient evidence of record to support the jury's implied findings, that is not role reversal. On the contrary, it is serving precisely the role of the judge under long established procedural rules. *See Panther Pumps & Equipment Co. v. Hydrocraft, Inc.,* 468 F.2d 225, 228, 175 USPQ 577, 579 (7th Cir.1972), *cert. denied,* 411 U.S. 965, 93 S.Ct. 2143, 36 L.Ed.2d 685 (1973); *May v. American Southwest Waterbed Distributors, Inc.,* 715 F.2d 876, 880, 218 USPQ 433, 437 (5th Cir. 1983).

The role of the trial judge in deciding upon motions for JNOV and new trial, and that of this court on review, are greatly facilitated when the jury has answered a series of factual inquiries in writing. When obviousness is an issue, interrogatories seeking answers in writing to inquiries drawn about those listed in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), insofar as the evidence adduced at trial relate to those inquiries, should be employed. *Connell, supra,* 722 F.2d at 1547, and cases cited therein; *American Hoist and Derrick Company v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1361 (Fed.Cir.1984). Examples modified from those employed in a few actual cases appear in Appendix B to this opinion.

■ Failure to submit detailed fact interrogatories will not in every case result in the need for a new trial. Rule 49, Fed.R. Civ.P. The practice is nonetheless strongly recommended as an appropriate means of guiding a jury, increasing the reliability of its verdict, and facilitating the judicial role following a jury trial.

### (B)(3) Instructions

As above indicated, the district court gave the jury extended, detailed, and careful instructions on the law. Those instructions correctly required the jury to make proper findings before reaching its conclusions on legal questions presented to it. The court's instructions specifically required findings on the inquiries set forth in *Graham, supra,* before the jury reached its conclusion on obviousness. The instructions contained no error of law governing the issues at trial that would warrant a new trial.

RDI has made no effort to claim error in any instruction, perhaps for the reason that the very few errors that do appear were favorable to it ("the combination must produce a new and surprising result"; "secondary factors . . . cannot support a finding [sic, holding] that the subject matter is not [sic, would not have been] obvious if your consideration of the three [Graham] factors listed leads to the conclusion that the subject matter is [sic, would have been] obvious"). RDI's briefs include headings asserting error in the instructions, but the text under those headings discusses its foregoing objections to the interrogatories, not to the instructions.

RDI asserts: (1) that Stucki is not entitled to presume that uncited U.S. Patents 1,983,088 to Kiesel and 1,989,433 to Symington were considered in the PTO, solely because they are listed in classes and subclasses searched; and (2) that those two patents and the Holland arrangement are more pertinent than the art cited. Having introduced what it says is more pertinent art, RDI then says it need thereafter ."show obviousness" only by a preponderance of the evidence, rather than be required to prove facts supporting obviousness by clear and convincing evidence. That is not the law. *Solder Removal v. ITC,* 582 F.2d 628, 633 n. 9 (CCPA 1978); *Richdel v. Sunspool,* 714 F.2d 1573 (Fed.Cir.1983).

■ As above indicated, and assuming its art was more pertinent (an unlikely assumption in view of the verdict) RDI was not entitled to an instruction that its burden could be met by a preponderance of the evidence. The presumption of validity is neither weakened nor destroyed where art more pertinent than that considered by the PTO is introduced; the offering party is simply more likely to carry the burden of proving facts clearly and convincingly under those circumstances. *Medtronic, Inc. v. Cardiac Pacemakers, Inc.,* 721 F.2d 1563, 1566 (Fed.Cir.1983). Similarly, RDI's argument that it was required to prove facts establishing its "failure to set forth the best mode" defense only by a preponderance, because that issue was not before the examiner, is without merit.

■ RDI included among its plethora of defenses one to which it applied at trial the inappropriate and long ago discredited "late claiming" label. Because Stucki had amended its claims in the course of prosecuting its application, RDI created from that single fact four variously labeled "defenses": (1) that the claims of the '292 patent are designed to encompass RDI's product, and therefore claim an invention different from that originally claimed; (2) that the claims entered by amendment were never supported by oath or declaration; (3) that RDI had acquired "intervening rights"; and (4) that Stucki was guilty of "late claiming". As the district court correctly recognized, the sole question raised by that single but variously stated defense is whether the claims entered by amendment were supported by the disclosure in Stucki's original application. As clearly set forth at 579 F.Supp. 369–370, 218 USPQ 631–632, there was ample evidence to support the finding that that question must be answered in the affirmative. RDI's argument that the patent should be held invalid in light of this many-labeled defense is and always was without merit.

■ Instructions must be viewed in their entirety. A new trial is permissible only when it is clear that error in the instructions as a whole was such as to have misled the jury. In the present case, we conclude that no such error occurred at any point in the instructions given the jury.

### (B)(4) Oath or Declaration

As indicated immediately above, there was no basis for RDI's assertion that the patent was invalid for failure to file a separate oath or declaration in support of claims inserted by amendment, those claims being fully supported in the original disclosure. Nor was there basis for RDI's assertion on appeal that the district court erred in failing to declare the patent invalid for lack of a supplemental oath or declaration.

### (C) Damages

Judge Broderick thoroughly analyzed the evidence on damages in light of the fifteen factors in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F.Supp. 1116, 1120, 166 USPQ 235, 238 (S.D.N.Y.1970), *modified,* 446 F.2d 295, 170 USPQ 369 (2d Cir.), *cert. denied,* 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971) and approved by his circuit (the Third) in *Trio Process Corp. v. L. Goldstein's Sons, Inc.,* 612 F.2d 1353, 1357, 204 USPQ 881, 883 (3d Cir.), *cert. denied,* 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 30 (1980).

A royalty rate of 7.5% was initially suggested in Stucki's January 1975 letter to RDI concerning the possibility of a license, the letter stating that "it is contemplated that the royalty rate will not be in excess of 7½ percent of the net selling price" of a carset.

The district court found that: (1) RDI's pre-tax profit was $72/carset (four snubbers), equalling 16.4% of the sale price; (2) RDI did not make consistent profits until it introduced its infringing snubber; (3) snubber sales increased from $343,200 in 1973 to $5,591,486 by 1980; and (4) although RDI lost $46,856 in 1973 it had, after it began its infringement, a growing taxable annual income reaching $1,292,830 in 1980.

In light of the importance of snubber sales to RDI and the dollar amounts of the selling price and profit, the district court determined that a reasonable royalty was $35/carset, an amount falling in the neighborhood of 7.5% of the snubber's 1974–75 selling price.

Damages of $2,182,986 were awarded based on the sale of 52,183.5 carsets, *supra* note 1, with 6% interest.

Neither party is satisfied with the court's judgment. RDI asserts that the judgment is based on a royalty rate approach that is clearly erroneous because: (i) it is not controlled by existing licenses; (ii) it does not match Stucki's 7.5% offer; (iii) it is not based on the claimed invention; and (iv) it was applied to foreign sales; and (v) it was applied to sales made before receipt of notice. Stucki asserts: (i) it is entitled to lost profits; and (ii) that a 6% interest rate is too low.

#### RDI's Assertions

##### i. Existing Licenses

■ RDI points to three licenses for bolsters and sideframes having royalty rates of either 1% or $1 as evidence of an industry standard. However, three licenses relating to products entirely distinct from the patented product are insufficient here to establish an industry standard. The district court correctly refused to apply the rates of those licenses in the present case.

##### ii. Stucki's Offer

Based on the 1975–1980 average selling price of $416.19/carset, the royalty of $35/carset set by the district court equates to an 8.4% royalty rate. Though that rate is less than 1% greater than the maximum royalty rate contemplated by Stucki in its January 1975 letter, RDI asserts that the district court was clearly erroneous in establishing it as a reasonable royalty.

■ The district court considered the royalty rate expressed in Stucki's letter as one factor in reaching its damages determination, noting that the letter itself and the evidence indicated that the letter was not a firm offer, that examination of RDI's

records was to have been a prerequisite to a firm offer, that no royalty rate would be accepted if it allowed a licensee to undersell Stucki, and that a minimum royalty of $500,000/year was desired to recover research and development costs. It cannot be said that the difference between 8.4% of the average selling price and a merely "contemplated" 7.5% of the *net* selling price constitutes a sufficient basis for overturning the determination of the district court.

### iii. Claimed Invention

■ Because some claims are in Jepson format, RDI asserts that the claimed invention must be limited to a biasing spring, and that the royalty rate must be based on the $40.00 sale price of four springs. No determination of the effect of the claim preamble was made and no basis appears in the record for limiting the claimed invention to a biasing spring. RDI is presumably aware that claim 10 is drawn to a snubber assembly and is not in Jepson format. The parties sell and customers buy snubber assemblies, not merely biasing springs. RDI's arguments against the application of the royalty rate to the selling price of snubber assemblies are without merit. *Bendix Corp. v. United States,* 676 F.2d 606 (Ct.Cl.1982); *Leesona Corp. v. United States,* 599 F.2d 958, 220 Ct.Cl. 234, 202 USPQ 424 (1979).

### iv. Foreign Sales

■ The award includes royalties for 1,671 carsets sold to foreign customers for installation in truck assemblies in foreign countries. Claim 10 is drawn only to the snubber assembly, not to truck assemblies. RDI admitted infringement of all claims in suit. When it made the 1,671 carsets in this country, it infringed claim 10. Whether those carsets were sold in the U.S. or elsewhere is therefore irrelevant, and no error occurred in including those carsets among the infringing products on which royalty was due.

### v. Notice

■ RDI's mere assertion before us that it did not receive actual notice of the patent until January 13, 1975 does not establish as clearly erroneous the district court's finding that RDI had notice 40 days earlier (December 1, 1974), a finding supported by testimony that marked snubbers were sold soon after marked castings were received in November of 1974.

### Stucki's Assertions

### i. Lost Profits

■ Stucki says the district court erred because it required Stucki to prove it would have made all RDI's sales, rather than the percent of those sales Stucki would have made. The district court imposed no such requirement.

The district court stated in its published Memorandum, "[t]here was no evidence in the record upon which this court could base a finding as to the percentage of the plaintiff's infringing sales which would have been made by the defendant in the absence of infringement". 579 F.Supp. 376, 218 USPQ at 636. It is clear that Stucki was free to prove whatever percentage of RDI sales, up to 100%, for which it was able to submit evidence. One who fails to submit evidence in support of a position cannot be heard on appeal to complain that the trial court failed to find facts upholding that position.

Stucki does attempt before us to rely on this testimony of RDI's expert:

> Q. If RDI were not in the market and if Stucki were able to sell 100 percent of the snubbers sold by RDI through 1980, by what percentage would Stucki's sales have increased?

> A. Approximately 68 percent.

In arguing that that testimony established that it would have made at least 68% of RDI's sales, Stucki misconstrues not only our role as an appellate court but the evidence itself. The question presupposes Stucki would have made 100% of RDI's sales and the answer indicates that *that* would have resulted in a 68% increase in *Stucki*'s sales. The cited testimony thus provides no support whatever for Stucki's assertion that the testimony indicates Stucki would have made 68% of *RDI's* sales,

and cannot support the view that error resides in the district court's statement concerning an absence of proof in the record.

Stucki correctly points out that 35 U.S.C. § 284 provides for damages "adequate to compensate" for the infringement and provides for a reasonable royalty only as the floor beneath which a damage award should not fall. Its difficulty here lies in its failure to prove actual damages, leaving the district court with no alternative but that of measuring damages by what would have been a reasonable royalty.

### ii. Interest

■■■ Lastly, Stucki asserts that a 6% interest rate neither represents the value of money nor adequately compensates Stucki for its loss. 35 U.S.C. § 284 provides the court "shall award ... damages adequate to compensate for the infringement ... together with interest and costs as fixed by the court...." That language "leaves the court some discretion in awarding prejudgment interest". *General Motors Corp. v. Devex Corp.,* —— U.S. ——, 103 S.Ct. 2058, 2063, 76 L.Ed.2d 211 (1983); *Lam, Inc. v. Johns-Manville Corp.,* 718 F.2d 1056, 1066, 219 USPQ 670, 676 (Fed.Cir.1983). Though the court could have selected a higher interest rate, Stucki's mere assertion that 6% is too low does not establish that an abuse of discretion occurred here.

Stucki tells us that in 1980 it stipulated to delay an injunction until decision on appeal, that it learned in the proceedings on damages that the two shareholders of RDI had been and were milking RDI of its assets, that it then filed a motion for an injunction on which the district court had not acted when this appeal was filed, that RDI's two stockholders received from RDI $2,200,000 and $1,000,000, all gained from RDI's infringement during the litigation, that RDI's infringing sales from just before the suit was filed were $19,000,000, with a $9,000,000 gross margin, that Stucki suffered actual damages of more than $7,000,000 over the more than five years from filing to completion of trial while it waited for a decision. The plight of the patent owner in this case may invoke sympathy; it cannot invoke a finding of abuse of discretion.

If Stucki waived an injunction in a mistaken expectation that RDI would remain responsible in damages, that is unfortunate. Nothing of record establishes the extent to which Stucki may have contributed to the five year delay before trial. In all events, the district court conducted a full proceeding on damages, at which Stucki was found not to have established its actual damages under 35 U.S.C. § 284. No basis exists therefore for overturning the award of damages and interest made in light of those proceedings.

### Further Proceedings

Upon return of this case to the district court, and assuming Stucki's motion for an injunction has not by then been acted upon, we presume that it will be granted at an early date. In determining damages to be awarded for infringement occurring from the March 28, 1983 final judgment until the grant of the injunction, the rate of interest applicable to those damages is equal to the coupon issue yield of U.S. Treasury bills. 28 U.S.C. § 1961 (1982). Stucki's concern for its ability to collect the full amount finally awarded is a matter for presentation to the district court, which may, of course, modify its judgment and is not without power to enforce it.

### Costs

The limit lines of lawyering are not always clear. The zenith of zeal was approached if not exceeded by those of RDI's defenses having no true basis in fact or law. Similarly, like RDI, Stucki sought on appeal a retrial of the facts on damages and a *de novo* approach to misconstrued testimony in the face of the district court's express finding, supported on the record, that it had not proved its actual damages. This court is content therefore to leave the parties where it finds them and to provide herewith that each party shall pay its own costs on appeal.

### Decision

No prejudicial legal error having been shown to have influenced the jury's verdict, the denial of RDI's motion for JNOV hav-

ing been eminently correct, the denial of RDI's motion for new trial representing no abuse of discretion, and no error having been shown in Judge Broderick's order awarding $2,182,986 in damages and interest, the final judgment entered on March 28, 1983 is affirmed.

AFFIRMED.

## APPENDIX A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAILROAD DYNAMICS, INC.　　　　　　　　　　CIVIL ACTION

v.

A. STUCKI COMPANY　　　　　　　　　　　　　NO. 76–800

### INTERROGATORIES TO THE JURY

We, the jury in the above captioned case, unanimously find as follows:

Instructions:　Answer questions 1, 2 and 3A.

1. Do you find that the plaintiff has proved by clear and convincing evidence that United States Patent No. 3,837,292 is invalid on the ground of obviousness?

 YES ＿＿＿　NO ＿X＿

2. Do you find that defendant has proved by a preponderance of the evidence that the effective filing date of the invention claimed in United States Patent No. 3,837,292 is August 22, 1969?

 YES ＿X＿　NO ＿＿＿

3A. Do you find that plaintiff has proved by clear and convincing evidence that United States Patent No. 3,837,292 is invalid on the ground that the invention claimed was known, in public use or on sale more than one year prior to the effective filing date of the patent application?

 YES ＿＿＿　NO ＿X＿

Instructions:　If your answer to question 3A is "No", proceed to question 4 and following questions.　If your answer to question 3A is "Yes", answer question 3B and following questions.

3B. Do you find that defendant has proved by clear and convincing evidence that use or sale of the claimed invention was an experimental use?

 YES ＿＿＿　NO ＿＿＿

4. Do you find that plaintiff has proved by clear and convincing evidence that United States Patent No. 3,837,292 is invalid on the ground that the amendment to the patent application filed on April 18, 1972 required a supplemental oath or declaration in that the amendment contained matter originally shown or described but not substantially embraced in the statement of invention or claim originally presented in the application?

 YES ＿＿＿　NO ＿X＿

5. Do you find that the plaintiff has proved by clear and convincing evidence that United States Patent No. 3,387,292 is invalid for late claiming?

 YES ＿＿＿　NO ＿X＿

6. Do you find that plaintiff has proved by clear and convincing evidence that United States Patent No. 3,837,292 is invalid on the ground that the patent application failed to set forth the best mode contemplated by the inventor for carrying out his invention?

 YES ＿＿＿　NO ＿X＿

7. Do you find that plaintiff has proved by clear and convincing evidence that claims 7 and/or 9 of United States Patent No. 3,837,292 are invalid on

1522

the ground they do not particularly point out and distinctly claim the subject matter which the applicant regards as his invention?

YES _____ NO __X__

8. Do you find that plaintiff has proved by clear and convincing evidence that United States Patent No. 3,837,292 is invalid on the ground that the specification of the application does not provide a description such that it would enable one skilled in the art to practice the invention?

YES _____ NO __X__

Instructions: If you have found by any of your answers to prior questions that Patent No. 3,837,292 is invalid, then proceed no further. If, however, you have not found the patent to be invalid, answer questions 9 and 10.

9. Do you find that plaintiff has proved by a preponderance of the evidence that it has acquired intervening rights under United States Patent No. 3,387,292?

YES _____ NO __X__

10. Do you find that defendant has proved by a preponderance of the evidence that plaintiff's infringement of United States Patent No. 3,827,292 was willful?

YES _____ NO __X__

Robert T. Hack
(Signature of Foreperson)

Dated: _____ JUNE _ 10 _ 1980.

APPENDIX B

Interrogatories

(MARK YES OR NO) YES NO

1. Is the _____ article within the scope and content of the prior art?

2. Did the impedance associated with the low pass filter of the phase locked loop in the _____ Stereo Tuner have substantially equal charge and discharge time constants? .

3. Does the _____ Stereo Tuner have constant driving impedance?

4. Does the term "constant driving impedance," as used in U.S. Patent No. _____ ("the reissue patent") teach a person of ordinary skill in the art how much variation that impedance can have and still be "constant"?

5. Was claim 1 of the reissue patent broadened in some respect from its scope in the original patent?

6. Did the inventor listed in the reissue patent act with bad faith or gross negligence when he made the statements of fact to the United States Patent and Trademark Office regarding the operation of the _____ Stereo Tuner?

7. Does the _____ chip have the following elements (which are set forth in each of asserted claims 3, 4, and 5):

 A first filter means?

 A second filter means?

 A constant driving impedance?

8. With respect to asserted claim 3, does the _____ article disclose:

 a. "a method of attaching a _____ lead of a _____ to a _____"

 b. "obtaining access to the _____"

 c. "screwing a free end of the _____ lead into the _____"

9. Is the level of ordinary skill in the pertinent art that of a _____?

10. Is the level of ordinary skill in the pertinent art that of the combination of skill and knowledge of a _____ together with the expertise of a _____ engineer having a mechanical or electrical aptitude or engineering degree?

---

NICHOLS, Senior Circuit Judge, concurring in the result.

I concur in the result and join in the portion of the opinion captioned (c) *Damages.* Much, and perhaps all, that is said in the prior parts of the opinion is correct, but I have serious qualms about saying it. The attempt is to have comprehensive guidelines as to all contingencies likely to arise when a jury is asked or allowed to return a general verdict dealing with the issue of obviousness under § 103 of the Act. No doubt district courts have a need for these guidelines and it would be a worthy enterprise for one of our able textbook writers. I have qualms about its being attempted by a panel of three judges of a twelve-judge court, even given a panel as distinguished as this one, though but reflected glory in the case of this writer.

The trouble is, it is impossible to foresee all contingencies. In future cases parts of this opinion will be cited, and the response will be made that the words referred to are dicta. Future judges of this court may be struck by our wisdom and wish to follow our words, or they may perceive they are confronted with a problem we did not foresee, and find our words an embarrassment. In the latter event, it cannot now be predicted whether they will profess themselves bound by our statements, or reject them as nonbinding dicta. The future utility or subsequent career of a dictum is wholly unpredictable, and that is why judges over centuries have avoided dicta, or at least said

**1524**

they were doing so. When a judicial exposition relates to a concrete issue to be decided, the record facts add meaning to the words, and safeguards exist against their being read out of context. With a dictum this is not so, and it may well end up having an effect the judicial author never intended.

Of course, the court should always state the rule of law it relies on, and this rule may cover more than the case before the court. Or dictum may be forensically necessary, for example, to deal with the arguments so commonly urged, predicting imaginary horribles if the court does what it has decided to do. Such forgivable dicta must be carefully limited and hedged.

But if I were to pronounce a dissertation on the subject at hand, I would start with the recent scholarly and comprehensive consideration by the Seventh Circuit, *en banc*, *Roberts v. Sears, Roebuck & Co.*, 723 F.2d 1324 (1983). I take it this is the "[l]anguage appearing elsewhere" referred to in Part (B)(1). Our own exclusive jurisdiction of certain classes of cases does not require us to follow opinions in such cases by other courts, but it does not require that we ignore them either. In my consideration of this difficult topic, I would grope for light from wherever it might emanate.

The obviousness issue in the instant case is, however, simple, and it can readily be shown that the district judge committed no reversible error. Railroads needed more effective snubbers to deal with car roll and pitch, in view of increasing speeds and load weights, and deteriorating roadbeds. Our inventor perceived that prior art snubbers needlessly attempted to control the entire broad range of car weight from full to empty. The prior art snubbers worked all right, but were not as efficient as the Stucki invention. He contrived a snubber that was inoperative when the car was empty and engaged only when the car was partially loaded. Railroad Dynamics alleged, however, that the prior art but unpatented Holland device did the same job in almost the same way. Allegedly it too went out of contact at light car loads. The greatest difference between the Holland and Stucki snubbers was not patentably

relevant, *i.e.*, the Stucki device in suit was hydraulic and Holland's was not. Stucki offered substantial evidence, however, which the jury could have believed, and in view of the verdict, doubtless did, that the Holland device did not work in the manner asserted by RDI. This is really all there was on the obviousness point. As the Chief Judge says, RDI wanted us to make a finding of our own contrary to the jury's, which we are not at liberty to do. There was no issue as to the jury being inadequately or erroneously instructed as to the obviousness issue or any other point. Surely no federal court, however deluded it may be about patent law in some more difficult areas, would reverse on this merely factual issue.