**Emanuel M. GLAROS, Plaintiff,**

v.

**H.H. ROBERTSON COMPANY, a Pennsylvania corporation, and Inryco, Inc., a Delaware corporation, Defendants.**

**No. 79 C 1803.**

United States District Court,
N.D. Illinois, E.D.

June 28, 1985.

William J. Harte, Lawrence Stanner and Glenn E. Schreiber; George P. McAndrews, Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., for plaintiff.

William Marshall and Nate Scarpelli, Merriam, Marshall & Bicknell; William M. Lee and William M. Lee, Jr., Lee & Smith, Chicago, Ill., for defendants.

## OPINION, ORDER AND DECREE

WILLIAM T. HART, District Judge.

This matter is before the Court after a jury trial for consideration of proposed conclusions by the Court with respect to the issues of obviousness, claim interpretation and prosecution history estoppel and on the motions of the defendants for a judgment

notwithstanding the verdict or for a new trial, with respect to which the Court rules as follows.

## I. VALIDITY

Plaintiff, Emanuel M. Glaros is the owner of United States Letters Patent No. 3,535,844 (the "Glaros patent"), issued on October 27, 1970, for an invention entitled "Structural Panels" in the name of Emanuel Michael Glaros, on application No. 744,-901, filed July 15, 1968. Defendant, H.H. Robertson Company ("Robertson"), is a corporation organized and existing under the laws of the State of Pennsylvania. Defendant, Inryco, Inc. ("Inryco"), is a corporation organized and existing under the laws of the State of Delaware.

Claim 2 of the Glaros patent is a dependent claim, incorporating by reference all the provisions of Claim 1. Nonetheless, its patentability must be determined independently of the patentability of Claim 1. Claim 2 of the Glaros patent is presumed to be valid. At trial, the defendants had the burden of proving by clear and convincing evidence that the Glaros invention, as defined by Claim 2, would have been obvious.

■ The jury's findings in Interrogatory No. 7, that the differences between the subject matter sought to be patented by Claim 2 of the Glaros patent and the prior art are such that the subject matter as a whole would not have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains, are supported by the credible evidence. (The answers to the Interrogatories are attached hereto as Appendix "A").

■ The legal conclusion of nonobviousness must be based on factual considerations including: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of ordinary skill in the pertinent art at the time the invention was made; and (4) whatever objective evidence may be present as indicia of obviousness or nonobviousness. *Graham v. John Deere,*

383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

**(1) Scope and Content of the Prior Art**

■ In response to Interrogatory No. 1A the jury found that the Kautz panel of Robertson was not a prior invention which was not abandoned or concealed. In response to Interrogatory No. 1B the jury found that Disclosure 606 of the Robertson was not a prior invention which was not abandoned or concealed. These findings are supported by the credible evidence to the effect that Robertson abandoned *and* either concealed or suppressed, as those terms are used in 35 U.S.C. § 102(g), both the Kautz and Disclosure 606 panels.

In response to Interrogatory Nos. 2a.–i., the jury found that the references listed where *not* more pertinent to Claim 2 of the Glaros patent than the references cited in the Patent and Trademark Office during the prosecution of the Glaros patent application. These findings are supported by credible evidence.

Particular attention was given to the Pimsner Patent No. 3,047,154 in granting summary judgment on Claims 1 and 3 (Memorandum Opinion November 14, 1984). However, as noted in footnote 2 of the opinion, the parties did not center on the question of whether a wall panel for an oven can be prior art for structural wall panels. Slip op. at 7, n. 2.

■ The evidence at trial disclosed that structural panels pose problems of attachment quite unlike those faced by an oven wall. *See, e.g., Stratoflex Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1535 (Fed.Cir.1983) (inventor's acknowledgement of what he considered relevant and nonrelevant prior art as evidence of the scope of the prior art). In addition, the Pimsner panel was not designed to be foamed or made to contain an insulant which adheres securely to the inner surfaces of the skins. There was also credible evidence introduced at trial that the Glaros panel was also designed to avoid delamination of the skins. The preferred embodiment of Claim 2 protrudes the tongue forward of the groove.

The tongue is designed to grip the insulant providing a mechanical interlock to prevent removal of the skin from the insulant even if delamination should occur. Pimsner's single thickness tongue design would not provide a mechanical interlock with insulant. These factors illustrate the different problems faced in the design of oven/refrigerator and exterior wall panels.

The jury was instructed that prior art included only those references "in the same field as the invention" or "in other fields ... if a person of ordinary skill seeking a solution to a problem in one art would seek the solution by referring to that other art" or if "the problem presented and overcome by the invention is the same as that overcome by the prior art." *See Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 620 (Fed.Cir.1985); *Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1572 (Fed.Cir.1984) (and cases cited therein). Having heard the evidence, the Court concludes that the jury was entirely correct in rejecting Pimsner as pertinent prior art governing Claim 2. There is also credible evidence in the record to support the jury's findings that prior art references 2b.–i. were each not more pertinent as that word was described in the instructions than the references cited to the Patent and Trademark Office during the prosecution of the Glaros patent application.

Contrary to Inryco's assertion, the jury's responses to Interrogatory No. 2 do not display any "lack of comprehension of the issues." *Quaker City Gear Works, Inc. v. Skil Corp.,* 747 F.2d 1446, 1452 (Fed.Cir. 1984). Rather, they reveal an appreciation of one aspect of the issue (ignored by the defendants in their post-trial papers) which, although not pursued by Glaros to preclude summary judgment as to Claims 1 and 3, was presented to the jury at trial.

### (2) Differences Between the Prior Art and the Claimed Invention

In response to Interrogatory Nos. 3A and 3B, the jury responded that the following features of Claim 2 were *not* found in the prior art:

a double tongue and groove side edge where the tongue of one panel member is spaced from the groove of the other panel member forming an offset portion a fastening means inserted between the spaced first and second side edges and passing through the offset portion.

The defendants offer only Pimsner as disclosing these features. The Court has found the jury properly determined that Pimsner is not within the relevant prior art. The same may be said of Kautz and Disclosure 606; they simply were not in the relevant prior art. Snyder (and its commercial embodiment, the Butler F103 panel) does not disclose either of these elements. Nor does the Fenestra type C panel disclose an *offset* tongue and grove interlock.

### (3) Level of Skill

The parties have stipulated that the level of skill of a person of ordinary skill in the art at the time Glaros designed his insulated building panel was either (1) a person with 5 to 7 years experience in the design, development, manufacture and erection of insulated building panels, or (2) a graduate engineer having 3 to 5 years of such experience. The jury's findings of fact are all consistent with this stipulation. This stipulation was also a relevant factor in the jury's determination of the credibility of the testimony of the witnesses.

### (4) Objective Evidence of Nonobviousness

### (a) Commercial Success

In response to Interrogatory No. 4, the jury found that the panels of Glaros enjoyed commercial success and that this success was due to the elements of Glaros' patent Claim 2. There is credible evidence to support a finding of commercial success (albeit modest). Inryco itself chose Glaros' design to market before "developing" the accused panel. Further, there is no evidence that the commercial acceptance of Glaros' device resulted from other than his design. The jury also found, in response to Interrogatory No. 5, that the Inryco and Robertson panels enjoyed commercial success; and that such success was due to the

elements of the Glaros patent Claim 2. There is credible evidence to support these findings. Changes made by Robertson in its panels brought those panels progressively closer to the subject matter of Glaros' Claim 2. The jury was instructed that it could find the success of those defendants' panels to be relevant only if their panels so embodied the Glaros design that these panels infringed the Glaros patent.

Further, the factors identified by Robertson as the basis for the success of its Formawall 1000 panels are generic to each and every one of the products Robertson markets. A poorly designed product marketed by Robertson would presumably fail in the marketplace despite these "advantages," so that these marketing factors are not sufficient (but may be necessary) conditions for commercial success in the structural panel market. The required nexus between the success of Robertson's panel and Glaros' design, *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed.Cir.1984), *cert denied*, — U.S. ——, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985), which the jury found Robertson's panel embodied, is sufficiently established.

**(b) Failure of Others**

In response to Interrogatory Nos. 6A and 6B, the jury found that others in the art, acting independently of Glaros and attempting to solve the problem addressed by Claim 2 of the Glaros patent, contemporaneously or previously did *not* make the same invention as described in Claim 2 of the Glaros patent and failed to solve the problem he addressed. These findings are supported by credible evidence.

Neither Inryco nor Robertson invented a structural panel contemporaneously with or previous to the invention of Glaros which functioned as did the Glaros invention. Robertson redesigned its panel after observing and obtaining a copy of Glaros' literature on the Glaros panel at a trade show in Chicago, Illinois, on or about October 19, 1968. Inryco failed in its early attempt prior to the Glaros panel to create or invent a panel.

In response to Interrogatory No. 6C, the jury found that prior to and at the time Glaros developed his invention, others in the art approached the problem addressed by Claim 2 of the Glaros patent *in a different manner unrelated to the approach taken by Glaros.* This finding is supported by credible evidence. Prior to Glaros, no structural panel design addressed the problem of heat transfer through a unitized panel with an offset like that of Glaros which physically separated the inner and outer skins. Although the defendants attempted to characterize several prior panels as containing an offset (e.g., Kautz, Fenestra), there is no real offset in these panels as that term is described in the Glaros patent. Further, each of the panel designs presented by the defendants addresses the heat transfer problem by inserting some non-conducting material between the inner and outer sheets, while Glaros needs no such additional member due to his offset.

**(c) Copying**

In response to Interrogatory Nos. 6D and 6E, the jury found that defendants Robertson and Inryco copied plaintiff's panel as defined by Claim 2. These findings are supported by credible evidence, and in light of the defendants' failure to design a similar panel, is strong evidence of nonobviousness. *See Vandenberg v. Dairy Equipment Co.*, 740 F.2d 1560, 1567 (Fed.Cir.1984).

A Robertson representative saw the Glaros panel at a trade show in Chicago, Illinois, on or about February 19, 1968, and returned with Glaros' literature which illustrated the Glaros panel. One of Robertson's inexperienced engineers assigned the task of designing a foam panel, was given the Glaros brochure. He testified that he immediately saw fundamental concepts that were lacking in the Robertson panel which Robertson then intended to produce. He quickly developed a prototype panel using concepts from the Glaros panel as defined by Claim 2. The Robertson team began with this prototype and in modifications progressively moved closer to the Gla-

ros preferred embodiment. The witness' testimony of copying could not have been clearer. Robertson's attempt to impeach the witness for bias, because he was discharged, was a question of credibility which the jury resolved against Robertson. The Court has no basis to alter the jury's determination. *See Railroad Dynamics, Inc. v. Stucki Co.,* 727 F.2d 1506, 1514 (Fed.Cir.1984).

The evidence also supports the conclusion that Inryco copied plaintiff's panel as defined by Claim 2. The engineer assigned to the design of panels by Inryco was not a person of ordinary skill in the art, having had no experience with foam panels. Before designing Inryco's panel, he viewed and studied both Glaros' preferred panel and the Robertson panel, which embodied Glaros' invention. The jury was not required to accept his denial that he copied.

## II. INFRINGEMENT

### (a) Literal Infringement

██ In response to Interrogatory Nos. 8A and 8C, the jury found that the Robertson and Inryco panels literally infringe Claim 2 of the Glaros patent. These findings are supported by the credible evidence. The first inquiry in determining infringement is a determination of the scope of the claims. Patent claims are directed to persons of ordinary skill in the art. *Fromson v. Advance Offset Plate, Inc.,* 720 F.2d 1565, 1571 (Fed.Cir.1983). Where expert testimony is given as to the meaning of certain terms and phrases to one of ordinary skill in the art, such testimony may form a proper basis for determining the scope of the claim. *McGill, Inc. v. John Zink Co.,* 736 F.2d 666, 675 (Fed. Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). Hence, although determining the scope of the claim is a question of law, *Fromson,* 720 F.2d at 1569, the resolution of the conflicting expert testimony presented by the parties was a question properly submitted to the jury. *McGill,* 736 F.2d at 672.

Both defendants contend that their panels do not literally infringe Claim 2 of the Glaros patent because they lack elements set forth in Claim 2. Robertson argues that its Formawall 1000 product lacks: (i) a fastener "inserted between the spaced first and second side edges," and (ii) a fourth face or flange of the tongue which is "inwardly parallel to the outer face" of the tongue. Inryco essentially adopts Robertson's fastener argument and also maintains that its panel has "bullet shaped tongues with sloping or tapered tongue sides" rather than the "parallel" tongue sides assertedly specified in Claim 2. Neither defendant maintains that any other elements of Claim 2 are absent from their accused products.

Although Claim 2 refers to a "fastening means," the invention defined by Claim 2 is not a "fastening invention." It is a structural panel. The structural panel has a particular configuration, the offsetting of the skins relative to one another, that along with other functions of the offset, permits fastening not visible from the exterior. The phrase "offset portion" is not recited in the patent specification. However, the meaning of the term is clear. It is formed by offsetting or sliding one skin relative to the other skin as stated in the Court's opinion of November 14, 1984. The first and second side edges are those portions of the outer and inner skins, respectively, needed to form the groove and tongue, respectively, of the side joint.

Both Inryco and Robertson argue that Claim 2 requires the fastener to pass through the thermal barrier created by the offset. Yet both Inryco and Robertson utilize a clip or spacer as part of its fastening means. The clip or spacer passes through the thermal barrier between the two skins. Thus, even under the defendants' overly narrow reading of Claim 2, the claim reads on their fasteners.

██ Further, the screw of the Inryco and Robertson fastening means secures the outer panel skin of their panels to the underlying girts by passing through a piece of metal added to the outer sheet of the Glaros design. This additional piece of

metal is part of the fastening system and not part of the first side edge as defined by Claim 2. "An accused device cannot escape infringement by merely adding features, if it has otherwise adopted the basic features of the patent," even if the additional feature "performs an additional function it does not perform in the patented device." *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 731 F.2d 840, 848 (Fed.Cir.) (quoting *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed.Cir. 1983)), *cert. denied*, —— U.S. ——, 105 S.Ct. 119, 83 L.Ed.2d 62 (1984). Although the Inryco and Robertson "fasteners" perform the function of attaching the outer skin directly to the girt, a function not found in Glaros (although the Glaros design indirectly fastens the outer skin to the girt, as described above, at p. 188), the fastener does pass between the first and second side edges. This result obtains whether the "fastener" is defined as the screw alone, the screw plus the clip or (as this Court finds) the screw, plus the clip, plus the added flange of the outer skin.[1] Thus, the Inryco and Robertson fastener fit squarely within the language of Claim 2.

Claim 2 does not designate particular faces that form the tongue or the groove nor does the word "parallel," as used in the claim serve as an adjective modifying such an unnamed face. The word "parallel" modifies "being bent," the bending that is performed parallel to the outer face. A face resulting from a bending force in a direction parallel to the outer face may result in a sloping face. Hence, the "sloping or tapered tongue sides" of Inryco's panel literally infringe Claim 2. Robertson's two-sided tongue also literally infringes Claim 2. A tongue formed from the three recited bending motions (outwardly, downwardly and inwardly) may result in a two-sided tongue, the second side of which is bent both downwardly and inwardly.[2] Thus, a reasonable jury could find, (as this Court finds) that both the tongue and the fastener of the accused panels fall within the scope of Claim 2, and that the Inryco and Robertson panels literally infringe Claim 2.

▬ The defendants claim that file wrapper estoppel applies. File wrapper estoppel is only applicable where infringement is found under the doctrine of equivalents. *Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1959); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361 (Fed.Cir.1983). Accordingly, it is not a defense to literal infringement. *Fromson*, 720 F.2d at 1571. Nonetheless, the file wrapper, or prosecution history is properly considered in evaluating the scope of Claim 2 for the purposes of determining literal infringement, and so has been considered by this Court. *McGill*, 736 F.2d at 673 ("Prosecution history may be used not only in an estoppel context but also as a claim interpretation tool").

### (b) Infringement Under the Doctrine of Equivalents

In response to Interrogatory Nos. 8B and 8D the jury found that the Inryco and Robertson panels as a whole perform sub-

---

1. Inryco and Robertson attach unwarranted importance to the fact that their screw breaks the thermal barrier formed by the offset in construing the requirements of Claim 2. In a panel twenty to thirty feet in length, any break in the thermal barrier occasioned by the two or three screws would be insignificant.

2. The Glaros Claim 2 is not indefinite simply because it may include a process limitation which defines the structure of the tongue and groove in terms of the result of a bending of the material of the skins in directions parallel and transverse to the outer surface of the panel forming members. The wrapper and file histo-

ry of the Glaros patent define the tongue as being adapted to fit within the groove. The tongue and a groove structure permit edgewise mating and not the mating structure of a dovetail tongue and groove in which the parts cannot mate edge-wise but must be slid endwise along one another in order to be fitted together.

In addition, the term "end edges" is recited in the patent specification and is shown, for example, in the original patent drawings Fig. 32. The meaning of the term "end edges" is clear and neither party's experts disagreed as to its meaning. Claim 2 is not vague and indefinite within the meaning of 35 U.S.C. § 112.

stantially the same function in substantially the same way and accomplish substantially the same result as the structure defined by Claim 2 of the Glaros patent. The findings are supported by credible evidence and support a finding of infringement by equivalents.

■ Thus, even if Claim 2 was not literally infringed, the accused panels of Inryco and Robertson infringe Glaros' Claim 2 under the doctrine of equivalents. Nonetheless, the jury's finding of equivalence is "subservient" to this Court's finding on the issue of estoppel. *Hughes Aircraft Co.,* 717 F.2d at 1363 (quoting *Autogiro Co. of America v. United States,* 383 F.2d 391, 400–1 (Ct.Cl.1967)).

■ Robertson appears to argue that the prosecution history of the Glaros patent application limits Glaros to the letter of Claim 2. Inryco asserts that the file history restricts Claim 2 to the embodiment shown in Figure 2. Even if an estoppel arises from the file history, the doctrine of equivalents is not completely eliminated.

> Depending on the nature *and purpose* of an amendment, it may have a limiting effect ranging from great to small to zero. The effect may or may not be fatal to application of a range of equivalents broad enough to encompass a particular accused product. It is not fatal to application of the doctrine [of equivalents] itself.

*Hughes Aircraft Co.,* 717 F.2d at 1363 (emphasis added).

> [W]henever the doctrine of file history estoppel is invoked, a close examination must be made as to, not only what was surrendered, *but also the reason for such a surrender.* The fact that claims were narrowed does not always mean that the doctrine of file history estoppel completely prohibits a patentee from recapturing some of what was originally claimed.

*Bayer Aktiengesellschaft v. Duphar International Research B.V.,* 738 F.2d 1237, 1243 (Fed.Cir.1984) (emphasis added).

■ Each of the portions of the prosecution history to which Inryco and Robertson refer are most accurately portrayed as an attempt to overcome the dove-tail joint disclosed in the Sohns patent (U.S. Patent No. 3,397,496 issued in August, 1968). Glaros' patent attorneys argued that the dove-tail side edges of the structure disclosed in Sohns could not be mated by sliding two panels together at the side-joint. Rather, the Sohns panels must be mated at their end-edges by sliding one side edge along the entire length of the side edge of the other panel; a process not feasible for twenty to thirty foot long panels. None of the amendments or arguments cited by the defendants are inconsistent with the application of a narrow range of equivalents to cover the tongues of their panels. The Inryco and Robertson tongued design allow their panels to be mated just as the Glaros panel is mated, without the difficulty posed by the Sohns design.

The defendants' estoppel argument regarding the fastener utilized by Glaros is equally unavailing. Glaros' attorney did emphasize in his arguments to the patent examiner the utility of a fastener which did not bridge the "thermal gap." However, as noted previously, any bridging of the thermal gap that results from Inryco or Robertson fasteners is insubstantial. Their fasteners are not inconsistent with the language of Claim 2 or the file history. Hence, the jury's finding of equivalence is not precluded by that portion of the file history dealing with Glaros' fastening means.

Assuming Claim 2 of the Glaros patent does not literally read on defendants' panels because of the sloping tongue and groove of Inryco or the two-sided tongue of Robertson, the range of equivalents needed to encompass the sloping tongue and groove and the two-sided tongue is small. Also, assuming Claim 2 of the Glaros patent does not literally read on defendants' panels because their fastening system connects the outer skin directly to the screw fastener, the range of equivalents needed to encompass the direct connection is also small. Application of the doctrine of equiv-

alents into either small area violates neither the prior art nor the doctrine of prosecution history estoppel. The defendants' panels are not based on the prior art, obvious modifications thereof or subject matter surrendered during prosecution of the Glaros application. There was no surrender of territory which would prevent application of the doctrine of equivalents to the defendants' panels. Arguments and amendments made during prosecution of the Glaros patent application, with respect to the Sohns Patent No. 3,397,496, would preclude a range of equivalents to an extent which would recapture the surrendered territory of the dove-tailed joint construction. However, such a range of equivalents is not involved. The range of equivalents sought is small and certainly does not seek to recapture the dove-tailed joint construction. Hence, the jury's finding of equivalence is not barred by any file wrapper estoppel.

## III. ROBERTSON'S WILLFULNESS

 The jury's finding in response to Interrogatory No. 9 that the infringement of Robertson in this case was willful is supported by the credible evidence. The evidence of copying and infringement was clear and convincing. Robertson's denial was not convincing.

The credibility of defendants' technical expert was repeatedly impeached with inconsistent statements in prior sworn testimony and with inconsistent testimony while testifying at trial. Nor does the prosecution history justify a competing manufacturer's belief that a slight change in the slope of the surfaces of the tongue and groove or a removal of a third side of the tongue or the connection of the outer skin to the screw fastener would allow the manufacturer to escape liability while at the same time permit the manufacturer's taking the full equivalent of the invention.

## IV. MOTIONS FOR JUDGMENT NOTWITHSTANDING VERDICT OR FOR A NEW TRIAL

 Based on the foregoing discussion of the evidence the defendants' motion for judgment notwithstanding the verdict must be denied. There is substantial credible evidence to support the jury's findings.

Both parties also ask for a new trial based on alleged errors in evidentiary rulings. The various arguments are without merit. Inryco's argument that it was prejudiced by the joint trial of Glaros' claims against itself and Robertson is equally meritless. The jury was repeatedly instructed to assess each defendant independently. See, e.g., Instruction 4, ("Each [defendant] is entitled to a fair consideration of its own defense and should not be prejudiced by the fact, if it should become a fact, that you find against the other"); Instruction 27 ("You should consider separately [for the purpose of determining infringement] the panels of Robertson and Inryco"). Further, each interrogatory inquired separately into the activities of Inryco and Robertson. The jury's responses to Interrogatory No. 9 indicate that it did not tar both defendants with a single broad brush, but instead was able to weigh each defendant's case separately. Thus, the alternative motion for a new trial must also be denied.

## V. CONCLUSIONS

The Court therefore finds and concludes as follows:

1. Plaintiff has established by a clear preponderance of the evidence that Claim 2 of the patent is valid. Defendants have failed to meet their burden of showing by clear and convincing evidence that the Glaros invention, as defined by Claim 2, was obvious, or that Claim 2 is vague, indefinite or otherwise invalid. Claim 2 is not invalid because it was obvious.

2. Plaintiff has established by a clear preponderance of the evidence that defendant Robertson and defendant Inryco have each literally infringed Claim 2 of the Glaros patent.

3. Alternatively, plaintiff has established by a clear preponderance of the evidence that both the Robertson panel Formawall 1000 and the Inryco panel infringe

Glaros' Claim 2 under the doctrine of equivalents.

4. The defendants have failed to establish file wrapper estoppel or prosecution history estoppel with respect to Claim 2 of the Glaros patent as applied to their respective panels.

5. The plaintiff has established by a preponderance of the evidence that Robertson willfully infringed Claim 2 of the Glaros patent.

6. Defendants' motions for judgment notwithstanding the verdict or for a new trial must be denied.

7. This is an appropriate case for the exercise of this Court's equity jurisdiction under 35 U.S.C. § 282 for injunctive relief.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. The motions for judgment notwithstanding the verdict or in the alternative for a new trial are denied.

2. Judgment is hereby entered in favor of plaintiff and against the defendant H.H. Robertson on the plaintiff's claim that Robertson has infringed Claim 2 of U.S. Letters Patent No. 3,535,844.

3. Judgment is hereby entered in favor of plaintiff and against the defendant Inryco, Inc. on the plaintiff's claim that Inryco has infringed Claim 2 of U.S. Letters Patent No. 3,535,844.

4. The defendants, their agents, employees and representatives are permanently enjoined from further infringement upon Glaros Claim 2.

5. All questions of damages, including costs and attorneys' fees, are reserved until the accounting, pursuant to 35 U.S.C. §§ 284 and 285.

6. The parties are ordered to complete damage discovery within 60 days of the date of this order.

7. The case is set for a report on status on July 16, 1985 at 9:15 a.m.

APPENDIX A

GLAROS,

V. 79 C 1803

H. H. ROBERTSON CO. ET AL.,

FILED JURY VERDICTS (INTERROGATORIES).

Are the following references evidence of prior invention which was not abandoned, suppressed or concealed?

1A. The Kautz Panel of the H.H. Robertson Company.

_____ Yes __✗__ No

1B. Disclosure 606 of the H.H. Robertson Company.

_____ Yes __✗__ No

**196**

2. Are the following prior art references more "pertinent" (as that word is defined in these instructions) to Claim 2 of the Glaros patent than the references cited in the Patent Trademark Office during the prosecution of the Glaros patent application?

| | YES | NO |
|---|---|---|
| a. United States Letters Patent No. 2,047,154 to Pimsner. | ____ | X |
| b. United States Letters Patent No. 3,290,845 to Snyder. | ____ | X |
| c. The <u>Light Gauge Cold-Forged Steel Design Manual</u> of the American Iron and Steel Institute. | ____ | X |
| d. Page 386 entitled OPEN SANDWICH TYPE PANELS in <u>Architectural Graphic Standards</u> by Ramsey and Sleeper, 5th Ed. 1956. | ____ | X |
| e. The Fenestra Type "C" panel. | ____ | X |
| f. Butler Manufacturing Company F-103 insulated building panel. | ____ | X |
| g. Page 395 entitled JOINT IN WOODWORK - PANELING in <u>Architectural Graphic Standards</u> by Ramsey and Sleeper, 5th Ed. 1956. | ____ | X |
| h. Disclosure 606 of the H.H. Robertson Company. | ____ | X |
| i. The Kautz Panel of the H.H. Robertson Company. | ____ | X |

With respect to Claim 2 of the Glaros patent, do any of the prior art references disclose or suggest the following elements.

3A. a double tongue and groove side edge where the tongue of one panel member is spaced from the groove of the other panel member forming an off set portion.

(List those references which disclose or suggest this element, or if none, state "None".)

_NONE_

3B. a fastening means inserted between the spaced first and second side edges and passing through the offset portion.

(List those references which disclose or suggest this element, or if none, state "None".)

___NONE_____

_____

_____

_____

 4A. Do you find that panels produced by Glaros enjoyed commercial success?

 YES __X__ NO _____

 4B. If you answered YES to 4A, do you find that any commercial success of panels produced by Glaros was due to the elements of Glaros patent Claim 2?

 YES __X__ NO _____

 4C. If you answered NO to 4A, do you find that any lack of commercial success of panels produced by Glaros was due to the elements of Glaros Patent Claim 2?

 YES _____ NO _____

 5A. Do you find any commercial success of the Inryco-Wall Pre-Insulated Sandwich panel was due to the elements of Glaros patent Claim 2?

 YES __X__ NO _____

 5B. Do you find that any commercial success of the H.H. Robertson Formawall 1000 panel was due to the elements of Glaros patent Claim 2?

 YES __X__ NO _____

6A. Do you find that others in the art, acting independently of Glaros, contemporaneously made the same invention as described in Claim 2 of the Glaros patent?

YES _____ NO ___X___

6B. Do you find that others in the art, acting independently of Glaros, contemporaneously or previously failed to solve the problem addressed by Claim 2 of the Glaros patent?

YES ___X___ NO _____

6C. Do you find prior to and at the time Glaros developed his invention, others in the art approached the problem addressed by Claim 2 of the Glaros patent in a different manner unrelated to the approach taken by Glaros?

YES ___X___ NO _____

6D. Do you find that defendant H.H. Robertson Company copied plaintiff's panel as defined by Claim 2?

YES ___X___ NO _____

6E. Do you find that defendant Inryco copied plaintiff's panel as defined by Claim 2?

YES ___X___ NO _____

7. Have the defendants demonstrated by clear and convincing evidence that at the time the claimed invention described in Claim 2 of the Glaros patent (as you have interpreted that claim) was made, the claimed invention as a whole would have been "obvious" to one of ordinary skill in the art in light of the teachings, as that person of ordinary skill would understand them,

of all the relevant prior art references; keeping in mind any objective evidence of obviousness or nonobviousness you have found to be present?

YES _____ NO ___X___

8A. Does Inryco's Inryco-Wall Pre-Insulated Sandwich panel literally infringe Claim 2 of the Glaros patent?

YES ___X___ NO _____

8B. Does Inryco's Inryco-Wall Pre-Insulated Sandwich Panel perform substantially the same function in substantially the same way and accomplish substantially the same result as the structure defined by Claim 2 of the Glaros patent?

YES ___X___ NO _____

8C. Does H.H. Robertson's Formawall 1000 panel literally infringe Claim 2 of the Glaros patent?

YES ___X___ NO _____

8D. Does H.H. Robertson's Formawall 1000 panel perform substantially the same function in substantially the same way and accomplish substantially the same result as the structure defined by Claim 2 of the Glaros patent?

YES ___X___ NO _____

9A. If you have found infringement by Inryco, did Inryco willfully infringe Claim 2 of the Glaros patent?

YES _____ NO ___X___

9B. If you have found infringement by H.H. Robertson Company, did H.H. Robertson Company willfully infringe Claim 2 of the Glaros patent?

YES ___X___ NO _____

**200**

FOREPERSON

Roberta Greene

Salvatore Rage

Dated: 3/13/85